UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

OTIS SIMMONS,

                                        Plaintiff,

                                                                    5:22-CV-00757
v.                                                                  (LEK/TWD)

WILLIAM J. FITZPATRICK, et. al.,

                                        Defendants.

_____

APPEARANCES:

OTIS SIMMONS
*Plaintiff, pro se*
05-B-2976
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

        Otis Simmons ("Plaintiff") initiated this action *pro se* on July 20, 2022, asserting claims

under 42 U.S.C. § 1983 against William J. Fitzpatrick, Onondaga County District Attorney,

("DA Fitzpatrick") and the Hon. William Walsh, Supreme Court Judge ("Judge Walsh")

(together, "Defendants").  (Dkt. No. 1.)  Plaintiff, who is incarcerated and has not paid the filing

fee for this action, seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)  The Clerk

sent Plaintiff's complaint and IFP application to the undersigned for initial review.  *See* 28

U.S.C. §§ 1915(e)(2)(B), 1915A.  Plaintiff has also filed a motion for appointment of counsel.

(Dkt. No. 4.)

For the reasons discussed below, Plaintiff's IFP application is granted for purposes of this review and the Court recommends *sua sponte* dismissing the complaint without prejudice and without leave to amend. Thus, Plaintiff's motion for appointment of counsel is denied without prejudice as moot.

## I.     IFP APPLICATION

Section 1915 of Title 28 of the United States Code "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."[1] *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time . . . of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.*; *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010).

Upon review, Plaintiff has demonstrated economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted.

---

[1] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. Based on that review, it appears Plaintiff had accumulated one strike for purposes of Section 1915(g) as of the date this action was commenced. *See Simmons v. Walsh*, No. 5:07-cv-012024 (DNH/GJD), ECF Dkt. No. 6 (*sua sponte* dismissing Plaintiff's complaint on initial review pursuant to 28 U.S.C. § 1915(e)(2)(b)).

[2] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

## II.    STANDARD OF REVIEW

This Court must conduct an initial review of complaints filed IFP and in civil cases where a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints). When conducting this review, "the court shall dismiss the case at any time if the court determines . . . the action is . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *accord id.* § 1915A(b)(1); *see also Allen v. Stringer*, No. 20-3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021).[3] The Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

---

[3] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.* It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## III.    SUMMARY OF THE COMPLAINT

Plaintiff, an inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action under Section 1983 asserting claims arising from his Onondaga County criminal proceedings. (Dkt. No. 1.) Generally, Plaintiff alleges that on October 11, 2005, he was convicted of a crime he did not commit. *Id.* at 4.[4]

---

[4] Plaintiff does not identify the crime for which he was convicted. According to the website maintained by DOCCS, Plaintiff has been confined to state prison since October 2005, having been convicted of first degree rape, first degree criminal sexual act, first degree sexual abuse, and third degree aggravated sexual abuse. *See* www.nysdocslookup.state.ny.us (DIN 05-B-2976) (last visited July 29, 2022). The Court takes judicial notice that Plaintiff's conviction was unanimously affirmed and the New York Court of Appeals denied leave to appeal. *See People v. Simmons*, 63 A.D.3d 1691 (N.Y. App. Div., 4th Dep't), *lv. denied*, 12 N.Y.3d 929 (N.Y. 2009). A review of Plaintiff's litigation history in this District reveals he also filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the October 11, 2005, judgment of conviction in Onondaga County Court, which was denied and dismissed by Memorandum Decision and Order on August 23, 2010. *Simmons v. Graham*, No. 9:09-cv-00952 (GTS), ECF Dkt. No. 25. By Mandate of the United States Court of Appeals for the Second Circuit issued

Plaintiff complains certain "rulings" made by the trial court "made it impossible for [him] to prove his actual innocence." *Id.* To that end, the complaint states the:

> DNA report dated September 8, 2005, showed the hairs recovered from the crime scene did not possess sufficient individuality to be used as the basis for a positive personal/individuality identification. This was not sufficient to be convicted. When [Plaintiff] requested to challenge the DNA by an independent lab, he was denied by the trial court. He appealed said judgment and that was denied too. These rulings made it impossible for [Plaintiff] to prove his actual innocence.

*Id.* Liberally construed, Plaintiff alleges violations of his federal constitutional rights, with specific claims relative to his procedural due process rights guaranteed by the Fourteenth Amendment to present a defense and to receive a fair trial. *Id.* at 5. He further maintains his "actual innocence." *Id.* He brings these claims against DA Fitzpatrick, who prosecuted Plaintiff, and the "Now Deceased" (sic) Judge Walsh, who presided over Plaintiff's trial. *Id.* at 2; *see People v. Simmons*, 63 A.D.3d 1691. For relief, he seeks to "Rectify the Constitutional Errors." *Id.*

## IV.    DISCUSSION

Plaintiff purports to bring this action pursuant to Section 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

---

September 20, 2020, Plaintiff's subsequent application for leave to file a successive 28 U.S.C. § 2254 petition was denied. *Id.*, ECF Dkt. No. 33.

Here, Plaintiff asks this Court to "Rectify the Constitutional Errors".  (Dkt. No. 1 at 5.)

However, a civil lawsuit may not be used to collaterally attack an existing criminal conviction.

*See Heck v. Humphrey*, 512 U.S. 477 (1994).  The United States Supreme Court explained that:

> a state prisoner's § 1983 action is barred (absent prior invalidation)
> – no matter the relief sought (damages or equitable relief), no
> matter the target of the prisoner's suit (state conduct leading to
> conviction or internal prison proceedings) – *if* success in that
> action would necessarily demonstrate the invalidity of confinement
> or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (italics in original); *see, e.g.*, *Barzee v. Tyler*,

No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *10 (N.D.N.Y. May 3, 2022) ("To the

extent plaintiff seeks declaratory and injunctive relief that would effectively invalidate his

existing criminal conviction, such claims are barred by the *Heck* doctrine."), *report-*

*recommendation adopted*, 2022 WL 2079084 (N.D.N.Y. June 9, 2022).

Stated differently, Plaintiff may not challenge the legality of his conviction in a Section

1983 action; he can only obtain such relief by bringing a petition for a writ of habeas corpus

under 28 U.S.C. § 2254.[5]  *See Preiser v. Rodriguez*, 411 U.S. 475 (1973) (noting that writ of

habeas corpus is sole remedy for prisoner seeking to challenge the fact or duration of his

confinement); *see also Heck*, 512 U.S. at 481 ("habeas corpus is the exclusive remedy for a state

prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier

release, even though such a claim may come within the literal terms of § 1983"); *Godley v.*

*Onondaga Cty.*, No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *6, n.4 (N.D.N.Y. Jan.

6, 2017) ("A habeas corpus petition, not a § 1983 suit, is the appropriate vehicle by which to

seek relief from illegal confinement."), *report-recommendation adopted*, 2017 WL 2804944

---

[5]  As noted, Plaintiff has already filed a habeas corpus petition in this Court, which was denied.
*See Simmons v. Graham*, No. 9:09-cv-00952 (GTS), ECF Dkt. Nos. 25, 33.

(N.D.N.Y. June 28, 2017); *Simmons v. Walsh*, No. 5:07-CV-1024 (DNH/GHL), ECF Dkt. No. 6 at 4 n.4 ("Plaintiff's request that he be released is not cognizable in an action pursuant to Section 1983.").

Here, because success on Plaintiff's § 1983 claims would necessarily imply the invalidity of his conviction, and because Plaintiff's conviction has not been overturned or otherwise invalidated, *Heck*'s favorable termination rule bars this action.[6] *See Perez v. Cuomo*, No. 09-CV-1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983."); *see, e.g.*, *Simmons v. Walsh*, No. 5:07-CV-1024 (DNH/GHL) (dismissing on initial review Plaintiff's 1983 claims to be "released and compensated" for violation of his constitutional rights and subsequent arrest as barred under *Heck*). Accordingly, the Court recommends dismissing the complaint without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[7]

---

[6] "Disposition of the case on *Heck* grounds . . . warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged by executive order, declared invalid . . . , or called into question by a federal court's issuance of a writ of habeas corpus." *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999).

[7] Notably, even if *Heck* did not bar adjudication of Plaintiff's claims, given that he seeks to sue the judge who presided over his state court criminal case as well as the state prosecutor, such claims would also likely be barred by absolute judicial, prosecutorial, and Eleventh Amendment immunity. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Montes v. O'Shea*, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *4 (N.D.N.Y. Apr. 6, 2021) ("Judicial immunity is immunity from suit, not just immunity from the assessment of damages."); *report-recommendation adopted*, 2021 WL 1758858 (N.D.N.Y. May 4, 2021); *Imbler v. Pachtman*, 424 U.S. 409, 437-38 (1976) (principles of judicial immunity from suit apply to prosecutors); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (when a district attorney decides whether to prosecute, he or she is representing the State not the county and is, thus, entitled to invoke Eleventh Amendment immunity); *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (finding that absolute immunity protects a prosecutor "not only from liability but also from suit").

Generally, district courts grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

Here, for the reasons set forth above, Plaintiff's Section 1983 claims are not cognizable because (1) Plaintiff is challenging the constitutionality of his criminal conviction itself; (2) he has not demonstrated the favorable termination of his criminal conviction pursuant to *Heck*; and (3) even if the *Heck* bar could be cured at a future date, Plaintiff's claims most likely would be barred by judicial, prosecutorial, and Eleventh Amendment immunity.  Thus, the Court recommends dismissal without leave to amend.

## V.     MOTION FOR APPOINTMENT OF COUNSEL

Although civil litigants do not have a constitutional right to the appointment of counsel, "[t]he court may request an attorney to represent any person unable to afford counsel."  *See* 28 U.S.C. § 1915(e)(1); *see also Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case.").  A court's power to request such assistance "must be understood to guarantee indigents meaningful access to the courts as required by the Constitution."  *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).

"In deciding whether to appoint counsel . . . the district judge should first determine whether the indigent's position seems likely to be of substance."  *Hodge*, 802 F.2d at 61; *see also Dolan v. Connolly*, 794 F.3d 290, 296-97 (2d Cir. 2015).  "If the claim meets this threshold

requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Hodge*, 802 F.2d at 61-62; *see also Dolan*, 794 F.3d at 296-97.

Here, in light of the foregoing recommendations, Plaintiff's motion for appointment of counsel (Dkt. No. 4) is denied without prejudice as moot.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be *sua sponte* **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and **WITHOUT LEAVE TO AMEND**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE AS MOOT**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *See Roldan v. Racette*, 984 F.2d 85 (2d Cir.

1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).[8]

**IT IS SO ORDERED.**

Dated: July 29, 2022
　　　　Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

---

[8] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id*. § 6(a)(1)(c).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

[1] At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request."[2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2] Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]     Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the Scoggy action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [sic ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." Merriweather v. Reynolds, 586 F.Supp.2d 548, 552 (D.S.C.2008), citing Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir.2003) and White v. Colorado, 157 F.3d 1226, 1231–32 (10th Cir.1998); see also Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]     Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

Nelson v. Scoggy, supra, 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

IV. Conclusion

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's in forma pauperis status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. [*]

[*]     Judge John G. Koeltl of the United States District
       Court for the Southern District of New York, sitting
       by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns*,
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee*, 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 1406606
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Saio BARZEE, Plaintiff,
v.
Kenneth H. TYLER, et al., Defendants.

8:21-CV-902 (GTS/CFH)
|
Signed 05/03/2022

**Attorneys and Law Firms**

Saio Barzee, 13-B-1933, Upstate Correctional Facility, P.O. Box 2001, Malone, New York 12953, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

*1 Plaintiff Saio Barzee ("plaintiff"), pro se, purported to commence this action on August 11, 2021, with the filing of a complaint and, in lieu of paying this Court's filing fee, a motion for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 1 ("Compl."); Dkt. No. 10. Plaintiff declares he is unable to pay the filing fee and has provided sufficient information, including a certified copy of his prisoner trust fund account. See Dkt. No. 10. The undersigned has reviewed plaintiff's IFP motion and determines that he financially qualifies to proceed IFP for the purpose of filing. [1]

[1] Plaintiff is advised that although he has been granted IFP status for the purposes of this review, he is still required to pay any fees and costs he might incur in this action.

### II. Initial Review

#### A. Legal Standard

In addition to determining whether plaintiff qualifies for IFP status, the Court must consider the sufficiency of the complaint's allegations pursuant to the standards set forth in Title 28 of the United States Code, Section 1915 ("Section 1915"). Section 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). It is a court's responsibility to determine that a plaintiff may properly maintain the complaint before permitting him to proceed with an action. See id.

Where, as here, the plaintiff acts pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). A pro se litigant's pleadings are held to a less stringent standard than those drafted by an attorney. See Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties."). However, this "does not exempt a [pro se litigant] from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citations omitted).

Pursuant to the standards set forth in Federal Rule of Civil Procedure ("Fed. R. Civ. P."), 8, a pleading must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3).

*2 Although "[n]o technical form is required," the rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d). Further, Rule 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to

a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). If dismissal is warranted and the plaintiff is pro se, the court generally grants leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Chavis v. Chappis, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991)).

**B. Complaint**

**1. Factual Allegations**

Plaintiff states that on May 23, 2013, after pleading guilty to the charge of "Robbery in the 1st Degree," he "was sentenced to 8 years with 3 years post release supervision to run concurrent with his violation of probation." Compl. at 4, ¶ 12. On July 25, 2013, plaintiff pursued an appeal before the Supreme Court of the State of New York Appellate Division Fourth Department. Id. at 4, ¶ 13. Plaintiff filed his notice of appeal with the Clerk of the Supreme Court Onondaga County, who acknowledged receipt, in addition to serving a copy upon the Onondaga County District Attorney's Office. Id.

"Thereafter, on or about August 1, 2013," the Onondaga County District Attorney's Office "notified the Appellate Division - Fourth Department that the People received a certified copy of [ ] plaintiff's notice of appeal." Compl. at 5, ¶ 14. However, plaintiff contends:

> **\*3** [H]e was never served with an order pursuant to Section 460.15 of the Criminal Procedure Law stating that a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department granting permission for the plaintiff to appeal to the Appellate Division, Fourth Department; nor was there an order filed by a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department stating any reasons for the denial of the plaintiff's application for assignment of counsel.

Id. at 5, ¶ 15.

On May 4, 2017, plaintiff appeared in Clinton County Court where he was convicted of "criminal possession of a weapon 3rd Degree (P.L. 265.02) and promoting prison contraband 1st Degree (P.L. 205.25)[.]" Compl. at 5, ¶ 16. He was sentenced on July 17, 2017, "to concurrent prison terms of 3 to 6 years to be served consecutively to the term of incarceration imposed by the Onondaga County Court. Id.

On or about July 16, 2020, plaintiff filed and served "a true and exact copy of a motion demanding Exhibits along with a notice to settle record and, inter alia, the proof of service via first class mail," upon Onondaga County Assistant District Attorney Michael A. Kasmarek. Compl. at 6, ¶ 17. On August 12, 2020, defendant Onondaga County Chief Assistant District Attorney Kenneth H. Tyler ("ADA Tyler") filed a notice of motion to dismiss the appeal on grounds that plaintiff failed to timely perfect his appeal. Id. at 6, ¶ 18. Plaintiff filed an opposition to the motion. Id. at 6, ¶ 19. Ultimately, the Appellate Division Fourth Department granted the motion, dismissing the appeal "without furtherance unless perfected on or before December 3rd, 2020." Id. at 6 ¶ 20.

Plaintiff filed a "motion to proceed as a poor person and for the assignment of counsel," which was granted. Compl. at 6-7, ¶¶ 21-22. Accordingly, Philip Rothschild, Esq. ("Attorney Rothschild") was assigned to represent plaintiff. See id. at 7, ¶ 22. Plaintiff states that Attorney Rothschild had to file "many motions" seeking extensions of time to file and perfect plaintiff's appeal because Attorney Rothschild had "not received all of the papers from the Onondaga County Clerk's Office and from plaintiff's prior defense counsel." Id. at 7, ¶ 23.

On February 26, 2021, despite having counsel for his appeal, plaintiff filed a pro se "CPL Article 440.10 motion to vacate the Judgment of Conviction[.]" Compl. at 8, ¶ 26. Plaintiff served "the necessary papers" upon Onondaga County District Attorney William Fitzpatrick, Attorney Rothschild, and "the Supreme Court of the City of Syracuse[.]" [2] Id.

[2]  While plaintiff's complaint does not indicate expressly which existing conviction his motion seeks to vacate, it would appear to be the 2013 conviction because that conviction is from Onondaga County whereas the 2017 conviction is from Clinton County. See Compl. at 4, 5 ¶¶ 12, 16.

On April 7, 2021, plaintiff wrote a letter to the Onondaga County Clerk, seeking information as to "the whereabouts of the CPL Article 440.10 motion papers" as he had not received a "receipt" from the County Court. Compl. at 8, ¶ 27. Around this time, plaintiff also received correspondence from Attorney Rothschild's law firm confirming receipt of his previous letter. See id. at 8, ¶ 28. Due to plaintiff's concerns that the "County Court" had not acknowledged receipt of his "Article 440.10 motion[,]" Attorney Rothschild indicated he would have his assistant check with defendant

Onondaga County Court Judge Stephen J. Dougherty's ("Judge Dougherty") law clerk to "see if the 440.10 motion was deemed filed." Id. Thereafter, on April 29, 2021, Judge Dougherty's law clerk, defendant Bonnie A. Buccina ("Ms. Buccina"), wrote a letter to plaintiff acknowledging receipt of plaintiff's motion and provided him with the corresponding index number. Id. at 9, ¶ 29.

**\*4**  On May 4, 2021, plaintiff wrote a letter to Ms. Buccina, advising her that he received her letter and that "the Court has neglected to establish a return date for which [ADA Tyler] ... ha[d] to file an answer (if any) to plaintiff's CPL Article 440.10 motion[.]" Compl. at 9, ¶ 30. Plaintiff also informed Ms. Buccina "that the County Court actions are prejudicial to [ ] plaintiff's defense because [he] submitted the required papers to all of the necessary parties upon the Court on the 25th day of February 2021 and therefore [the People] had already had approximately 60 days['] notice to prepare a response[.]" Id. at 10, ¶ 31. Plaintiff added that "said time frame was approximately 30 days after the return date that plaintiff had asked for" within his motion. Id. In the same letter, plaintiff requested that the County Court "establish a return date for [the People] to answer" the motion not to "exceed past another 60 days timeframe." Id. Plaintiff concluded his letter by requesting that if ADA Tyler failed to respond before the return date, "the Court should determine that the [P]eople's time to respond has expired and that the [P]eople's silence should mean that the [P]eople have conceded." Id.

The following day, May 5, 2021, plaintiff "submitted a letter, entitled as the written Notice of Index Number" to ADA Tyler, and enclosed the letter he wrote to Ms. Buccina. Compl. at 10, ¶ 32. Plaintiff informed ADA Tyler that the County Court had failed to establish a return date and that the People had failed to submit any papers "as required pursuant to N.Y. Ct. Rules, section 202.8, subdivision (a), and that no stipulations of adjournment has been agreed upon[.]" Id. at 10-11, ¶ 32.

On June 8, 2021, plaintiff sent a letter to both ADA Tyler and Ms. Buccina expressing his concern about the County Court's "lack of reason to conduct their responsibilities [which] still has not been cured[.]" Compl. at 11, ¶ 33. Plaintiff "request[ed] that the [P]eople's time to respond be "deemed as expired and that the [P]eople have conceded." Id. In the same letter, plaintiff expressed concern that because he could "not appeal his criminal conviction until his 440.10 motion was completed because many of the arguments raised in the 440.10 motion are unpreserved due to the prejudicial reasons

raised in plaintiff's 440.10 motion papers and are thus non-reviewable by the Appellate Division." Id. at 11, ¶ 34. He added that he has been "deprived of his liberty and his right to equal protection of the law as a result of the Court stating that the Court won't hold any form of ruling ... until the [P]eople provided a response ... and by the Court failing to establish a return date[.]" Id. at 12, ¶ 35. Plaintiff has not received a response from either ADA Tyler or Ms. Buccina. See id. at 12, ¶ 36.

On July 29, 2021, approximately two weeks before plaintiff commenced this action, he received a letter from Attorney Rothschild informing him that Attorney Rothschild had "finished reviewing all of the papers, researched the issues, and had prepared a draft brief for review." Compl. at 7, ¶ 24. In response, plaintiff wrote a letter to both Attorney Rothschild and the Appellate Division Fourth Department "requesting the right to file a pro se supplemental brief along with the Direct Appeal[.]" Id. at 8, ¶ 25. Plaintiff also requested that his "CPL Article 440.1 motion be perfected (if needed) along with the direct appeal, so that the plaintiff's arguments can be preserved[.]" [3] Id.

---

[3]    The undersigned notes that the Fourth Department rendered a decision as to plaintiff's appeal on April 22, 2022, affirming his conviction. See People v. Barzee, KA 20-01020, 2022 WL 1197636 (4th Dept. Apr. 22, 2022). However, as addressed below, the relief requested in this action concerns plaintiff's pending CPL 440 motion before the Onondaga County Court.

---

**2. Demand for Relief**

Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983 for purported violations of his federal and state constitutional rights, seeking declaratory and injunctive relief. See Compl. at 1, ¶ 1. Plaintiff's complaint asserts generally that this action is to "cure [ ] the prejudicial actions being wrongfully inflicted upon the unwilling plaintiff by the herein stated defendants." Id. at 12, ¶ 37. He "contends that his [F]ifth and [F]ourteenth [A]mendment right to due process, along with his right to the [E]qual [P]rotection [C]lause of the [F]ourteenth [A]mendment are being violated[.]" Id. at 13, ¶ 38. More specifically, he contends that Judge Dougherty, "with the aid of" his law clerk, Ms. Buccina, "is neglecting to properly perform his official duties ... by prejudicially and wrongfully declaring that he will not render a judicial decision

pertaining to plaintiff's CPL Article 440.10 motion 'until such time as the [P]eople's brief is received.' " Id.

**\*5** Moreover, plaintiff contends his constitutional rights are being violated by ADA Tyler, who is "neglecting to properly perform his duties ensuing from ... the special responsibilities of prosecutors and other Government lawyers as is required under New York rules of professional conduct[.]" Compl. at 13, ¶ 39. Plaintiff asserts that ADA Tyler has "fail[ed] to correct the harmful errors being wrongfully inflicted upon [ ] plaintiff by defendant Stephen J. Dougherty." Id.

Plaintiff states that he is being denied procedural due process as a result of "defendants' failure to disclose all of the documentations being requested by [ ] plaintiff's appellate division assigned counsel." Compl. at 15, ¶ 43. Regarding his purported equal protection denial, he adds that defendants' actions are "arbitrarily and irrationally singl[ing] out and treat[ing] [plaintiff] differently from others in similar situations and that there is no rational basis for the difference in treatment." Id. at 14, ¶ 44. Plaintiff asserts that defendants are not entitled to immunity from suit under the Eleventh Amendment because this action seeks only declaratory and injunctive relief. Id. at 15, ¶¶ 46-48. Moreover, he claims that the Eleventh Amendment "does not apply to any suits against County and City officials." Id. at 16, ¶ 47.

Plaintiff's complaint sets forth two separately titled causes of action. See Compl. at 15-23, ¶¶ 45-67. "Count One" seeks declaratory relief in the form of an order "declaring that [ ] defendants have acted in violation of the United States Constitution." Id. at 15, ¶ 45. Specifically, he seeks an order declaring that (1) Judge Dougherty wrongfully and unconstitutionally failed to establish a return date; (2) plaintiff's motion to vacate must be granted upon considering the merits, without conducting a hearing, as it has been "either conceded to by the [P]eople" or "substantiated by the [ ] documentary proof"; (3) it is "not mandatory" for the People to respond to a motion to vacate; (4) Judge Dougherty unconstitutionally prejudiced plaintiff's defense; (5) Judge Dougherty rule the People's time "has expired"; (6) Judge Dougherty render a decision "within (14) days of the completion" of the instant action; (7) the "exhaustion doctrine ... is not required because [ ] plaintiff is not asking for the federal court to overturn his conviction"; (8) the People had reasonable notice and fair opportunity to review plaintiff's claims and correct any alleged errors "but failed to do so"; and (9) it is ADA Tyler's "special responsibilit[y]" as a prosecutor to "either file[ ] an answer admitting to the

allegations raised" in plaintiff's motion or file an "Article 78 mandamus to compel" Judge Dougherty to render a decision. Id. at 16-20, ¶¶ 49, 59.

"Count Two" of plaintiff's complaint demands injunctive relief compelling ADA Tyler to "stop instituting [or] allow to be instituted or maintain a criminal charge when the prosecutor knows or it is obvious that the charges raised in the indictment against [ ] plaintiff are not supported by probable cause[.]" Compl. at 20-21, ¶ 60. He seeks to compel ADA Tyler to "openly declare ... that the [ ] failure to file or serve any response papers shall be deemed as consent to the granting of" his motion. Id. at 21, ¶ 61. Additionally, he seeks to compel ADA Tyler, "in the interest of justice," to "file a grievance against [Judge Dougherty]" and, assuming his declaratory relief request is successful and Judge Dougherty "refuses to follow" same, to file an "Article 78 mandamus to compel dismissal of the indictment[.]" Id. at 21, ¶ 62. Plaintiff also seeks to compel ADA Tyler to provide plaintiff "with the pre-trial line up transcripts and with any other papers or transcripts which have not yet been disclosed to the plaintiff." Id. at 21, ¶ 63.

 *6  Furthermore, as a part of Count Two's injunctive relief request, plaintiff seeks to compel Judge Dougherty to "disqualify himself" from presiding over the plaintiff's motion if he continues to: (1) "fail to determine that [ ]plaintiff's CPL 440.10 motion papers have adequately met the burden of demonstrating that their [sic] exist substantial legal grounds for vacating the judgment"; (2) "fail to determine that ... [the People] shall be deemed as giving consent"; or (3) "fail to render a decision as being requested by [ ] plaintiff[.]" Compl. at 22, ¶¶ 64-66.

Finally, plaintiff contends that the "exhaustion of State remedies is not required because (1) the delay is attributable to the State's Court System and (2) there is an absence of available State corrective process, and that process, even if available, would be ineffective in protecting plaintiff's rights." Compl. at 23, ¶ 67. Plaintiff states that the "numerous letters written to the defendants ... satisfies the exhaustion requirement[.]" Id. He concludes that it is ADA Tyler's "duty to file an [A]rticle 78 mandamus to compel" Judge Dougherty "to render a decision" and give notice "of the [P]eople's intentions." Id.

**C. Analysis** [4]

4    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

In light of plaintiff's pro se status, the undersigned has liberally construed the complaint's allegations, identifying the strongest arguments raised therein. See Kirkland, 760 F.3d at 224. As asserted in his complaint, plaintiff brings this action pursuant to Title 28 of the United States Code, Section 1983 ("Section 1983"), which is the appropriate mechanism for the relief sought. See Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (noting that Section 1983 "provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and the laws' of the United States."). Plaintiff alleges violations of his federal constitutional rights, with specific claims relative to his procedural due process and equal protection rights guaranteed by the Fourteenth Amendment.

**1. Immunities** [5]

5    Plaintiff asserts in his complaint that "the Eleventh Amendment immunity rule does not apply to suits for injunctive or declaratory relief against State officials sued in their official capacity." Compl. at 15, ¶ 46. However, the undersigned need not address this contention considering the alternative grounds for dismissal, addressed in detail herein.

**i. Judicial Immunity**

The Second Circuit has held that "absolute immunity" is appropriate for judges in the exercise of their judicial function. Tulloch v. Coughlin, 50 F.3d 114, 116 (2d Cir. 1995) (citations omitted). Judicial immunity may be overcome only in two circumstances: (1) where the actions were taken outside of judicial capacity, or (2) where the actions, though judicial in nature, were taken in complete absence of all jurisdiction. See Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations omitted). Judicial immunity also applies to judicial law clerks, who are considered an extension of the judges they serve. See Oliva v. Heller, 839 F.2d 37, 40 (2d Cir. 1988).

In determining whether judicial immunity applies, the first step in the analysis is to determine the nature of the act. See Mireles, 502 U.S. at 12-13. If the nature of the act is "a function normally performed by a judge," the judge is acting

2022 WL 1406606

within judicial capacity. Id. at 12. The scope of the judge's jurisdiction must be "construed broadly." Gross v. Rell, 585 F.3d 72, 85 (2d Cir. 2009) (quoting Stump v. Sparkman, 435 U.S. 349, 359 (1978)). As such, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump, 435 U.S. at 359. Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature[.]" Bliven v. Hunt, 573 F.3d 204, 210 (2d Cir. 2009).

 **\*7** The undersigned finds that, regardless of the relief plaintiff seeks, Judge Dougherty and Ms. Buccina are entitled to judicial immunity because a Section 1983 action is not available against a judicial officer absent allegations of a violation of a prior declaratory decree or the unavailability of declaratory relief. See, e.g., Bracci v. Becker, No. 1:11-CV-1473 (MAD/RFT), 2013 WL 123810, at \*3 (N.D.N.Y. Jan. 9, 2013) aff'd 568 F. App'x. 13 (2d Cir. 2014) (summary order) (discussing that "prospective injunctive relief ... is not available under § 1983 absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable.") (citing Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999)); Montes v. O'Shea, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at \*4 (N.D.N.Y. Apr. 6, 2021), report and recommendation adopted by, No. 1:21-CV-303, 2021 WL 1758858 (N.D.N.Y. May 4, 2021) (quoting Bobrowski v. Yonkers Courthouse, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (additional citation omitted) (discussing judicial immunity applies in Section 1983 case "unless a declaratory decree was violated or declaratory relief was unavailable")); see also 42 U.S.C. § 1983. Although plaintiff has attempted to bring an action pursuant to Section 1983 against two judicial officers, he has failed to allege any violation of a prior decree or the unavailability of declaratory relief. See generally Compl. Importantly, as discussed below, plaintiff's procedural due process claim fails because he has an available state remedy to seek declaratory and injunctive relief against defendants via N.Y. C.P.L.R. § 7803. Accordingly, any purported Section 1983 claims against Judge Dougherty and Ms. Buccina are not actionable.

### ii. Prosecutorial Immunity

Prosecutors are entitled to absolute immunity based on the scope of their function as an advocate in the judicial phase of criminal process. See Warney v. Monroe Cnty., 587 F.3d 113, 120-121 (2d Cir. 2009). The "ultimate question" of prosecutorial immunity is "whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates' when they engaged in the challenged conduct." Id. at 121 (quoting Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir. 1996)); see also Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (discussing that "[t]he cases thus draw a line between the investigative and administrative functions of prosecutors, which are not protected by absolute immunity, and the advocacy functions of prosecutors, which are so protected"). Although prosecutorial immunity bars Section 1983 claims for damages, an official-capacity claim for prospective injunctive relief may proceed to remedy an alleged "ongoing violation of federal constitutional law." Avitabile v. Beach, 277 F. Supp. 3d 326, 332 (N.D.N.Y. 2017) (citations omitted). As plaintiff seeks only injunctive relief to remedy the allegedly-continuing constitutional due process and equal protection violations relating to the lack of response and decision on his motion to vacate, his claims against ADA Tyler are not barred by absolute immunity.

### 2. Procedural Due Process

The Due Process Clause provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The "two threshold questions" in any procedural due process denial claim are: (1) "whether the plaintiff possessed a protected liberty or property interest protected by the United States Constitution or federal statutes[,]" and (2) "if so, what process was due before plaintiff could be deprived of that interest." Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995). "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted). "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to deprivation." Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001); see also N.Y. State Nat. Org. for Women v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001) ("[A] due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.") (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). On the other hand, "[w]hen the

deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." Hellenic, 101 F.3d 880 (citing Hudson v. Palmer, 468 U.S. 531, 532 (1984); Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)).

 **8** Although Section 1983 "allows plaintiffs with federal or constitutional claims to sue in federal court without first exhausting state judicial or administrative remedies" (Hellenic, 101 F.3d at 881 (citations omitted)), "[w]hen § 1983 claims allege procedural due process violations," the Court may nonetheless evaluate whether state remedies exist "because that inquiry goes to whether a constitutional violation has occurred at all." Chase Grp. All. LLC v. City of N.Y. Dept. of Fin., 620 F.3d 146, 153 (2d Cir. 2010) (quoting Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 468 n. 12 (2d Cir. 2006)) (internal quotations omitted). Said differently, "[w]hen there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty[,]" "there *is no* constitutional violation (and no available § 1983 action)." Hellenic, 101 F.3d at 882 (collecting cases).

The Second Circuit has determined that Article 78 of the New York State Civil Practice Law and Rules is "a perfectly adequate postdeprivation remedy" in cases involving alleged procedural due process violations by state actors, including prolonged delays in governmental decision-making. Hellenic, 101 F.3d at 881 (collecting cases); see, e.g., C.C.S.com USA, Inc. v. Gerhauser, 518 F. App'x. 1, 3 (2d Cir. 2013) (summary order) (stating there was no denial of due process for zoning board's delay where, inter alia, plaintiff never pursued an Article 78 hearing to compel); DeMartino v. N.Y. State Dept. of Labor, 167 F. Supp. 3d 342, 367 (E.D.N.Y. 2016) (noting availability of Article 78 mandamus relief for delayed N.Y. Lab. L. § 220 hearing "counsel[s] against the finding of a due process violation") (citations omitted). "[Article 78 is] an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, [and] provides both a hearing and a means of redress for petitioners." Hellenic, 101 F.3d at 881. "Additionally, constitutional issues can be decided in Article 78 proceedings." Id. (citing Christ the King Reg. High Sch. v. Culvert, 815 F.2d 219, 224-25 (2d Cir. 1987)).

Plaintiff is not challenging any established state procedure purportedly denying him procedural due process; rather, his allegations are directed at the acts of three individual government officials: Judge Dougherty, his law clerk, Ms.

Buccina, and ADA Tyler. See Compl. at 2 ¶¶ 4-6, 8. Plaintiff contends that "exhaustion of State remedies is not required because (1) the delay is attributable to the State's Court System and (2) there is an absence of available State corrective process, and that process, even if available, would be ineffective in protecting plaintiff's rights." Id. at 23, ¶ 67.

As an initial matter, plaintiff seeks an order declaring, inter alia, that it is ADA Tyler's "responsibility, in the interest of justice and under the special responsibilities of prosecutors and other government lawyers," to have filed either an answer to his "440.10 motion" or "an Article 78 mandamus to compel [Judge Dougherty] to render a decision." Compl. at 20, ¶ 59. However, an Article 78 proceeding is an adequate postdeprivation remedy in New York State. See Hellenic, 101 F.3d at 882 (collecting cases). Plaintiff provides little to no explanation as to what, if anything, is preventing him from initiating an Article 78 proceeding. See Compl. at 20, ¶ 59. He references only the "numerous letters written to the defendants" in contending that the complained of delay "is attributable to the State's Court System" and that, even if there were an available "State corrective process," it would be "ineffective in protecting plaintiff's rights." Id. at 23, ¶ 67. The letters referenced in plaintiff's complaint reiterate his position that the "440.10 motion" should be granted based on the People's untimely response. See id. at 9-10, ¶¶ 28-31. These letters do not demonstrate that plaintiff is unable to commence an Article 78 proceeding in state court and plaintiff has not otherwise plead facts alleging that such proceeding would be inadequate. See generally id. Thus, an Article 78 proceeding would be the appropriate avenue for relief, which is adequately available to plaintiff under state law. See id. at 16-20, ¶¶ 49-58; N.Y. C.P.L.R. § 7803. As plaintiff has not attempted to pursue such remedy, his constitutional rights have not been violated.

### 3. Equal Protection

 **9** The Equal Protection Clause requires state actors to treat similarly situated persons alike. See City of Cleburn, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "Typically an equal protection claim is brought by a member of a vulnerable class, who alleges discrimination based upon that membership." AYDM Assocs., LLC v. Town of Pamelia, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (citing Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)). "However, 'the equal protection guarantee also extends to individuals who allege no specific

class membership but are nonetheless subjected to invidious discrimination at the hands of government officials.' " Id. (citations omitted).

A plaintiff may bring a "class-of-one" claim by showing that he or she "was intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.' " AYDM Assocs., 205 F. Supp. 3d at 268 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 654 (2000)). " '[C]lass-of-one plaintiffs 'must show an extremely high degree of similarity between themselves and the persons [with] whom they compare themselves.' " Bill & Ted's Riveira, Inc. v. Cuomo, 494 F. Supp. 3d 238, 246 (N.D.N.Y. 2020) (citations omitted); see also Hu v. City of N.Y., 927 F.3d 81, 93 (2d Cir. 2019) (resolving uncertainty as to the "extremely high" degree of similarity required for comparators in "class-of-one" claims). To prove a "class-of-one" claim:

> [A] plaintiff must establish that he and a comparator are "prima facie identical" by showing that "(i) no rational person would regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and differences in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake."

Hu, 927 F.3d at 92 (quoting Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2008)). Plaintiff has not alleged any intentional targeting by any defendant based on his membership in a specific class; rather, plaintiff is asserting a "class-of-one" claim by alleging that he was "arbitrarily and irrationally singled out and treated differently from others in similar situations and that there is no rational basis for the difference in treatment." Compl. at 15, ¶ 44.

Plaintiff's purported equal protection claim is inadequate because he has failed identify any "prima facie identical" comparators. Hu, at 927 F.3d at 92 (citations omitted); see, e.g., Callwood v. City of Kingston, No. 1:15-CV-1298 (GLS/TWD), 2020 WL 2838602, at *22 (N.D.N.Y. Jun. 1, 2020) (dismissing equal protection claim where the plaintiffs failed to identify any similarly situated individuals that were treated differently by the defendants); MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (dismissing equal protection claim, "whether pled as a selective enforcement claim or a class-of-one claim," where the complaint failed to "identify any comparators or similarly situated entities"). While plaintiff asserts, in a conclusory manner, that he has been treated differently "from others in similar situations," he provides no indication as to whom. Compl. at 15, ¶ 43. Considering that class-of-one plaintiffs must show "an extremely high degree of similarity" among their comparators, it is likely that plaintiff is unable to point to anyone who is "prima facie identical." Hu, 927 F.3d at 92 (citations and internal quotation marks omitted). Accordingly, it is recommended that plaintiff's Equal Protection claim be dismissed.

### 4. Heck Preclusion

**\*10**  A civil lawsuit may not be used to collaterally attack an existing criminal conviction. See Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court of the United States held that a Section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate an extant criminal conviction unless "the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87.

Plaintiff seeks an order that would indirectly compel his conviction to be invalidated, despite his assertion that he "is not asking for the federal court to overturn his conviction." Compl. at 19, ¶ 57. While framed as claims for procedural due process and equal protection violations, the requested relief, if granted, would effectively circumvent plaintiff's pending 440.10 motion and necessarily cause his existing conviction to be overturned. Plaintiff seeks an order compelling ADA Tyler to stop "instituting" or "maintain[ing]" the criminal indictment against him, stating that it lacks "probable cause." Compl. at 20-21, ¶¶ 60-62. Moreover, plaintiff requests this Court compel ADA Tyler to file an Article 78 and "dismiss the indictment" in the event Judge Dougherty does not comply with a declaratory judgment in his favor. Id. at 21, ¶ 62. Plaintiff asks this Court to declare that his motion vacate his conviction must be granted "upon considering the merits" as either conceded to by the People or "substantiated by unquestionable documentary proof." Id. at 17-18, ¶ 52. Such relief would cause his conviction to be invalidated.

Based on the facts alleged in the complaint, plaintiff's conviction has not been overturned by a state appellate court or called into question by a federal habeas corpus proceeding;

thus, plaintiff may not bring any claims that, if resolved in his favor, would necessarily invalidate the conviction. To the extent plaintiff seeks declaratory and injunctive relief that would effectively invalidate his existing criminal conviction, such claims are barred by the Heck doctrine.

### III. Opportunity to Amend

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). Plaintiff cannot cure the defects in his claims against defendants Judge Dougherty and Ms. Buccina because a Section 1983 action cannot be brought against them; thus, they are entitled to absolute immunity from suit. See Montero, 171 F.3d at 761. Accordingly, plaintiff's complaint should be dismissed with prejudice and without leave to amend as to those defendants.

As to ADA Tyler, plaintiff has failed to state a claim for procedural due process and equal protection violations, thus such claims should normally be dismissed without prejudice. See, e.g., Walker v. Martuscello, No. 9:18-CV-1189 (BKS/CFH), 2020 WL 132313, at *2 (N.D.N.Y. Jan. 13, 2020); Amato v. McGinty, No. 1:21-CV-00860 (GLS/TWD), 2022 WL 226798, at *12 (N.D.N.Y. Jan. 26, 2022). However, as discussed above, whether framed as procedural due process or equal protections violations, plaintiff's requested relief is barred by the Heck doctrine. Nonetheless, while the undersigned finds that the claims against ADA Tyler should be dismissed without an opportunity to amend, because such claims are barred by the Heck doctrine, they are dismissed without prejudice. See Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) (citations omitted).

### IV. Conclusion

**\*11** **WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (Dkt. No. 10) be **GRANTED** for the purpose of filing; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED, WITH PREJUDICE**, and without leave to amend, as to Stephen J. Dougherty and Bonnie A. Buccina; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED, WITHOUT PREJUDICE**, and without leave to amend, as to Kenneth H. Tyler;

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [6]

[6] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2022 WL 1406606

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2079084
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Saio BARZEE, Plaintiff,

v.

Kenneth H. TYLER, A.D.A.; Bonnie A.
Buccina, Law Clerk; Stephen J. Dougherty,
Onondaga County Court Judge, Defendants.

8:21-CV-0902 (GTS/CFH)
|
Signed 06/09/2022

**Attorneys and Law Firms**

SAIO BARZEE, 13-B-1933, Plaintiff, Pro Se, Upstate
Correctional Facility, P.O. Box 2001, Malone, New York
12953.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Saio Barzee ("Plaintiff") against Onondaga
County Court Judge Stephen J. Dougherty, Law Clerk Bonnie
A. Buccina, and Assistant District Attorney Kenneth H. Tyler
("Defendants"), is United States Magistrate Judge Christian
F. Hummel's Report-Recommendation recommending that
Plaintiff's Complaint against Defendants Dougherty and
Buccina be dismissed with prejudice under the doctrine of
absolute judicial immunity, and that his Complaint against
Defendant Tyler be dismissed without prejudice under *Heck
v. Humphrey*, 512 U.S. 477 (1994). (Dkt. No. 19.) Plaintiff has
not filed an Objection to the Report-Recommendation, and
the deadline by which to do so has expired. (*See generally*
Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Hummel's thorough Report-
Recommendation, the Court can find no clear-error in
the Report-Recommendation.[1] Magistrate Judge Hummel

employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein, and Plaintiff's
Complaint against Defendants Dougherty and Buccina is
dismissed with prejudice, and Plaintiff's Complaint against
Defendant Tyler is dismissed without prejudice.

[1]    When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Hummel's Report-
Recommendation (Dkt. No. 19) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
**DISMISSED**, such that

(1) his claims against Defendants Stephen J. Dougherty and
Bonnie A. Buccina are **DISMISSED with prejudice**, and

(2) his remaining claims, against Defendant Kenneth H.
Tyler, are **DISMISSED without prejudice**

The Court certifies that an appeal from this Decision and
Order would not be taken in good faith.

**All Citations**

Slip Copy, 2022 WL 2079084

**WESTLAW**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.    1

Case 5:22-cv-00757-LEK-TWD    Document 5    Filed 07/29/22    Page 27 of 49
Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)
2017 WL 2805162

2017 WL 2805162
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Erick GODLEY, Plaintiff,

v.

ONONDAGA COUNTY, et al., Defendants.

6:16-cv-01419 (DNH/TWD)

|

Signed 01/06/2017

**Attorneys and Law Firms**

ERICK GODLEY, 14-B-1321, Collins Correctional Facility,
P.O. Box 340, Collins, New York 14034, pro se

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** The Clerk has sent to the Court for initial review
the complaint in this 42 U.S.C. § 1983 civil rights
action brought by *pro se* Plaintiff Erick Godley against
Defendants Onondaga County, Detective Ann Rether
("Detective Rether"), District Attorney William Fitzpatrick
("DA Fitzpatrick"), Assistant District Attorney Michael
Manfredi ("ADA Manfredi"), Attorney Charles Keller
("Keller"), and Key Bank. (Dkt. No. 1.) Plaintiff, who has not
paid the filing fee for this action, has filed an application
for leave to proceed *in forma pauperis* ("IFP Application"). (Dkt.
No. 8.) For the reasons that follow, the Court grants Plaintiff's
IFP Application and recommends the *sua sponte* dismissal of
the complaint without prejudice.

## I. PLAINTIFF'S IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is
unable to pay" the standard fee for commencing an action.
28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP
Application, the Court finds that Plaintiff has demonstrated
economic need and has filed the inmate authorization form
required in the Northern District to proceed with this matter
*in forma pauperis*. (Dkt. No. 9.) Therefore, Plaintiff's IFP
Application (Dkt. No. 8) is granted.

## II. LEGAL STANDARD FOR INITIAL REVIEW OF
COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma
pauperis*, 28 U.S.C. § 1915(e) directs that when a person
proceeds *in forma pauperis*, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii). Thus, it is a court's responsibility to
determine that a plaintiff may properly maintain his complaint
before permitting him to proceed with his action.

Moreover, under 28 U.S.C. § 1915A, a court must, as soon as
practicable, *sua sponte* review "a complaint in a civil action
in which a prisoner seeks redress from a governmental entity
or officer or employees of a governmental agency" and must
"identify cognizable claims or dismiss the complaint, or any
portion of the complaint, if the complaint (1) is frivolous,
malicious, or fails to state a claim upon which relief may be
granted; or (2) seeks monetary relief from a defendant who
is immune from such relief." 28 U.S.C. §§ 1915A(a) & (b);
*see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per
curiam).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325
(1989). "An action is frivolous when either: (1) the factual
contentions are clearly baseless such as when the claims
are the product of delusion or fantasy; or (2) the claim is
based on an indisputably meritless legal theory." *Livingston
v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)
(citations and internal quotation marks omitted). Although
extreme caution should be exercised in ordering *sua sponte*
dismissal of a *pro se* complaint before the adverse party
has been served and the parties have had an opportunity to
respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.
1983), the court still has a responsibility to determine that a
claim is not frivolous before permitting a plaintiff to proceed.
*See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991)
(per curiam) (holding that a district court has the power to
dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a
complaint must plead enough facts to state a claim that
is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to

Case 5:22-cv-00757-LEK-TWD    Document 5    Filed 07/29/22    Page 28 of 49

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2805162

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.*

In determining whether a complaint states a claim upon which relief may be granted, the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. ALLEGATIONS OF THE COMPLAINT
Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges violations of his constitutional rights arising from his arrest on May 31, 2013, in Syracuse, New York, and his subsequent prosecution and conviction. (Dkt. No. 1 at ¶¶ 1, 2.) Plaintiff describes this action as "a case of actual innocence" and claims he is currently incarcerated for a crime, second-degree attempted robbery, which he did not commit. *Id.* at ¶¶ 1, 7.

As set forth in the complaint, on May 31, 2013, at approximately 8:30 a.m., Plaintiff was walking to work while counting his bus fare and lunch money, totaling eight dollars. *Id.* at ¶¶ 20-21. Two unnamed Syracuse police officers observed Plaintiff counting his money. *Id.* at 21. Plaintiff was stopped, questioned, handcuffed, and taken to the Criminal

Investigations Division. *Id.* at ¶¶ 21-23. Eventually Detective Rether informed Plaintiff that "there was a robbery and the [two] witnesses say it's you." *Id.* at ¶ 26. Plaintiff declared that he "did not rob anybody." *Id.* at ¶ 27. Detective Rether replied, "we have it on video." *Id.* Thereafter, the two arresting officers walked Plaintiff across the street to the Justice Center, and informed Plaintiff he was being charged with "1st degree robbery and possession of a weapon in the 3rd." *Id.* at ¶ 31.

Plaintiff was "in jail for about a month" before he talked to an attorney. *Id.* Public Defender Attorney Lisa Coma ("Coma") eventually met with Plaintiff. *Id.* at ¶ 35. Coma advised Plaintiff he could plead guilty and accept a prison sentence of two to four years. *Id.* at ¶ 35. Although Plaintiff told Coma he was innocent and requested to view the Key Bank ATM security video, Coma advised Plaintiff to accept the plea offer because an "all-white jury" would convict him and he "could end up doing [fifteen] years[.]" *Id.*

**\*3** Despite maintaining his innocence, Plaintiff agreed to accept the plea deal and appeared before Judge Brunetti [1] with Coma. *Id.* However, at the last minute, Plaintiff "could not honestly and truthfully" plead guilty. *Id.* at ¶ 36. Plaintiff wrote a letter to Judge Brunetti informing him what Coma had said and at his next court hearing, Judge Brunetti made Coma "hand over" Plaintiff's file and adjourned the hearing until Plaintiff was appointed a new attorney. *Id.* at ¶ 37.

[1]     The Court notes the Honorable John J. Brunetti is a Court of Claims Judge and Acting Supreme Court Justice for Onondaga County Supreme Court.

In August 2013, Onondaga County appointed Keller to represent Plaintiff. *Id.* at ¶¶ 38, 55. Despite Plaintiff's repeated requests, Keller also failed to obtain a "clear copy" of the Key Bank ATM security video. *Id.*

Plaintiff alleges approximately eight months later, ADA Manfredi altered a copy of the Key Bank ATM security video, "making all the images distorted and a little blurry," thereby, "violating *Brady*." *Id.* at ¶ 40. Plaintiff alleges Keller "purposefully waited and colluded" with the District Attorney's Office in order to allow ADA Manfredi time to manipulate the security video so that Plaintiff could be "maliciously prosecuted" for the May 31, 2013, robbery. *Id.* Further, despite numerous requests, ADA Manfredi refused to provide Plaintiff or his family with an original and "clear" copy of the Key Bank ATM security video. *Id.* at ¶ 43. Plaintiff alleges "they all conspired together and just ignored/did away

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2805162

with this 'critical exculpatory material evidence' and coerced and threatened [Plaintiff] with a possible [twenty-five] year sentence[.]" *Id.* at ¶ 44.

"After ten (10) long hard months, they finally broke [Plaintiff] down" and Keller told Plaintiff that his mother wanted him to "take what you can get and get back to your [family]." *Id.* at ¶ 45. Plaintiff informed Keller he would plead guilty and accept the original plea offer presented by Coma. *Id.* However, ADA Manfredi informed Keller that the original offer was no longer available. *Id.* Instead, Plaintiff would have to accept a five-year sentence. *Id.* On the day of his trial, Keller told Plaintiff he would probably be sentenced to twenty-five years after the jury found him guilty. *Id.* at ¶ 47. Because Plaintiff was "afraid, confused, and more," Plaintiff agreed to plead guilty and accept a five-year sentence. *Id.*

Judge Brunetti, however, would not accept Plaintiff's plea. *Id.* at ¶ 48. Instead, Judge Brunetti advised Keller and ADA Manfredi they needed to agree to the terms of the original plea offer or Plaintiff would be sentenced to seven years, the maximum sentence on a class D felony. *Id.* "Needless to say," ADA Manfredi would not agree to the terms of the original plea offer, and Plaintiff "ended up receiving a seven (7) year prison sentence with five (5) years of PRS" resulting in a "twelve (12) year sentence" even though he is "completely innocent." *Id.* at ¶ 49. [2]

2      Although Plaintiff does not include the date of his conviction in his complaint, according to the publicly available website maintained by DOCCS, Plaintiff was received into DOCCS custody on May 1, 2014, for second-degree attempted robbery, with an aggregate maximum sentence of seven years, with an earliest conditional release date of May 24, 2019. *See* http://nysdoccslookup.doccs.ny.gov (last visited January 5, 2017).

Plaintiff has organized the above events into six causes of action. *Id.* at ¶¶ 51-57. First, Plaintiff alleges Onondaga County had a policy and/or custom to coerce and threaten innocent people, particularly minorities such as Plaintiff, in a malicious and bad faith manner to maximize DA Fitzpatrick's conviction rate for media and political reasons. *Id.* at ¶ 50. Plaintiff further alleges Onondaga County, through the District Attorney's Office violated his rights to "be free of malicious prosecution" and violated *Brady v. Maryland*, 373 U.S. 80 (1963), by suppressing evidence favorable to an accused. *Id.* at ¶ 51.

**\*4** Second, Plaintiff alleges Detective Rether violated his rights to be free of malicious prosecution because she "initiated and continued a malicious prosecution against Plaintiff." *Id.* at ¶ 52. She also kept Plaintiff handcuffed for several hours even though Plaintiff proclaimed his innocence, thereby violating his rights under the Eighth and Fourteenth Amendments to be free of cruel and unusual punishment. *Id.* Plaintiff claims he was denied due process of law because Detective Rether refused to call Plaintiff's parole officer, despite Plaintiff's repeated requests and her personal knowledge that Plaintiff was under his parole officer's supervision. *Id.*

Third, Plaintiff alleges DA Fitzpatrick violated his rights to be free of malicious prosecution, cruel and unusual punishment, and violations of due process because he is the supervisor of all Assistant District Attorneys, including ADA Manfredi, and was thus "personally involved" in the constitutional violations. *Id.* at ¶ 53.

Fourth, Plaintiff alleges ADA Manfredi violated Plaintiff's rights to be free of malicious prosecution because ADA Manfredi purposely suppressed and manipulated the original Key Bank ATM security video and pressured an innocent man to take a plea deal. *Id.* at ¶ 54. Plaintiff further alleges that as a result of ADA Manfredi's malicious prosecution, Plaintiff's sentence constitutes cruel and unusual punishment because he is actually innocent. *Id.*

Fifth, Plaintiff alleges Keller, while "appearing" to represent Plaintiff from about August 2013 to April 2014, was "simultaneously conspiring" with DA Fitzpatrick and ADA Manfredi. *Id.* at ¶ 55. In addition, Plaintiff claims Keller engaged in collusion and deceit, gave very bad advice, ignored Plaintiff's repeated requests to obtain clear color copies of the Key Bank ATM security video, outright lied to Plaintiff, coerced and threatened Plaintiff to plead guilty, and ignored Plaintiff's requests at sentencing in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the New York State Constitution, and New York Judiciary Laws. *Id.*

Lastly, Plaintiff alleges despite repeated attempts to Key Bank for a "clear color copy" of the May 31, 2013, ATM security video, "they" will not help, and "it's just not right" because Plaintiff needs a copy of the video to "prove [his] actual innocence." *Id.* at ¶ 57.

As relief, Plaintiff requests an immediate Order directing Key Bank, DA Fitzpatrick, and ADA Manfredi to provide Plaintiff and his mother with clear, color copies of the ATM security video, along with all security videos taken on May 31, 2013. *Id.* at ¶ 58. Plaintiff also seeks compensatory and punitive damages from Onondaga County, Detective Rether, DA Fitzpatrick, ADA Manfredi, and Keller in the amount of $32,290,000. *Id.* Plaintiff has submitted sixteen pages of exhibits in support of his complaint. (Dkt. No. 1-1.)

## IV. ANALYSIS

Plaintiff commenced this action for "deliberate and continuous violations of his rights pursuant to 42 U.S.C. § 1983 for conspiracy, malicious prosecution, ineffective assistance of counsel, and wrongful confinement[.]" (Dkt. No. 1 at ¶ 2.) Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**\*5** 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff "must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Section 1983 does not in and of itself create any substantive rights; rather the plaintiff must demonstrate a violation of an independent federal constitutional or statutory right. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

### A. *Heck v. Humphrey*

Plaintiff's § 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477, (1994). In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. at 486-87 (emphasis in original); *see also Peterson v. Todd*, No. 5:12-CV-1371 (MAD/DEP), 2013 WL 2487253, at \*4 (N.D.N.Y. June 7, 2013 [3] ) ("A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983.") (citation and internal quotation marks omitted).

[3]    Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Plaintiff's various claims regarding his false arrest, false imprisonment, malicious prosecution, conspiracy, violations of *Brady*, ineffective assistance of defense counsel, and sentencing represent challenges that fall squarely within the ambit of *Heck*. Were Plaintiff to succeed on any theory espoused by him, he would necessarily call into question the validity of the conviction he is challenging in this action. *See, e.g.*, *Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned); *Clemmons v. Albany Cnty. District Attorney's Office*, No. 1:16-CV-884 (TJM/CFH), 2016 WL 5793201, at \*3 (N.D.N.Y. Aug. 25,

Case 5:22-cv-00757-LEK-TWD    Document 5    Filed 07/29/22    Page 31 of 49

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2805162

2016) (dismissing *Brady* claims on initial review as barred by *Heck*); *Peterson*, 2013 WL 2487253 (dismissing § 1983 claims of fraud and malicious prosecution against district attorney as barred by *Heck* where the plaintiff's continued incarceration suggested the inmate's conviction had not been overturned); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding the plaintiff's claims for false arrest/imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*).

Moreover, the fact that Plaintiff is seeking injunctive relief, as well as monetary relief, does not require a different finding. *See Clemmons*, 2016 WL 5793201, at *3 (citing *Loyd v. Cuomo*, No. 8:14-cv-829 (GLS/CFH), 2015 WL 3637409, at *2 (N.D.N.Y. June 10, 2015) ("[T]he Supreme Court has explained that the *Heck* rule applies 'no matter the relief sought (damages or equitable relief).' ") (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) and citing *Caswell v. Green*, 424 Fed.Appx. 44, 45 (2d Cir. 2011))).

**\*6** Here, because Plaintiff has failed to show that his conviction has been overturned (and, in fact, declares he is currently incarcerated as a result of the above-referenced constitutional violations for a crime he did not commit) his § 1983 claims are barred under *Heck* unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated. [4]

[4]     A habeas corpus petition, not a § 1983 suit, is the appropriate vehicle by which to seek relief from illegal confinement. *See Ingram v. Herrick*, 475 Fed.Appx. 793, 794 (2d Cir. 2012) (citing *McKithen v. Brown*, 481 F.3d 89, 102 (2d Cir. 2007)).

In light of the above, the Court recommends dismissing Plaintiff's § 1983 claims as barred by *Heck*. [5]

[5]     Because the Court recommends dismissing Plaintiff's § 1983 claims as barred by *Heck*, no determination has been made as to the merits of Plaintiff's claims.

### B. Opportunity to Amend
Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that he be given an opportunity to amend prior to an outright dismissal. *See Cuoco*, 222 F.3d 112. However, for the reasons set forth above, leave to amend would be futile due to the bar imposed by *Heck*. "Disposition of the case on *Heck*

grounds, however, warrants only dismissal *without* prejudice, because the suit may be reinstated should [the] plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (emphasis in original) (quoting *Heck*, 512 U.S. at 487). Accordingly, the Court recommends dismissing Plaintiff's § 1983 claims without prejudice.

### C. Claims Under the New York State Constitution and Laws
Inasmuch as the Court is recommending that Plaintiff's federal claims be dismissed, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's § 1983 claims without prejudice. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**WHEREBY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 8) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDCE** as barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**RECOMMENDED** that the District Court decline to exercise supplement jurisdiction over Plaintiff's state law claims; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

Case 5:22-cv-00757-LEK-TWD    Document 5    Filed 07/29/22    Page 32 of 49
**Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)**
2017 WL 2805162

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

[6]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2805162

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Godley v. Onondaga County, Not Reported in Fed. Supp. (2017)

2017 WL 2804944

2017 WL 2804944
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Erick GODLEY, Plaintiff,
v.
ONONDAGA COUNTY, a municipality; Ann
Rether, Detective; William Fitzpatrick, District
Attorney; Michael Manfredi, Assistant District
Attorney; Charles Keller, Attorney; and Key Bank, in
their individual and official capacities, Defendants.

5:16-cv-1419(DNH/TWD)
|
Signed 06/28/2017

**Attorneys and Law Firms**

ERICK GODLEY, 14-B-1321, Collins Correctional Facility,
P.O. Box 340, Collins, New York 14034, Plaintiff pro se.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Erick Godley brought this civil rights
action pursuant to 42 U.S.C. § 1983. On January 6,
2017, the Honorable Therese Wiley Dancks, United States
Magistrate Judge, advised by Report-Recommendation that
plaintiff's complaint be dismissed without prejudice and that
the exercise of supplemental jurisdiction be declined as to
plaintiff's state law claims. Plaintiff filed timely objections to
the Report-Recommendation.

Based upon a de novo review of the portions of the Report-
Recommendation to which plaintiff objected, the Report-
Recommendation is accepted and adopted in all respects. See
28 U.S.C. § 636(b)(1).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is DISMISSED without prejudice; and

2. Supplemental jurisdiction over plaintiff's state law claims
is DECLINED and those claims are DISMISSED without
prejudice.

The Clerk is directed to file judgment accordingly and close
the file.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2804944

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Chillemi v. Town of Southampton, E.D.N.Y., May 4, 2013

2009 WL 1046137
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Manuel PEREZ, Plaintiff,

v.

Andrew CUOMO, Kerri Hoovert, Kristopher
Camacho, Kenneth Paccio, Richard A.
Brown, Maryam M. Lipkansky, Joseph
Grosso, and Seymour Rotker, Defendants.

No. 09–CV–1109 (SLT).
|
April 17, 2009.

**Attorneys and Law Firms**

Manuel Perez, Stormville, NY, pro se.

### *MEMORANDUM AND ORDER TO SHOW CAUSE*

TOWNES, District Judge.

**\*1** Plaintiff Manuel Perez, who is currently incarcerated at Green Haven Correctional Facility, brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that police officers, prosecutors, and judges violated his constitutional rights in connection with his arrest and prosecution. This action was initially filed in the United States District Court for the Southern District of New York on January 5, 2009, but was transferred to this Court by order dated February 23, 2009. *Perez v. Cuomo,* No. 09 Civ. 1625, slip op. (S.D.N.Y. Feb. 23, 2009). Plaintiff's application to proceed *in forma pauperis* is granted, but plaintiff is directed to show cause, within thirty (30) days of the date of this Order, why this action should not be dismissed. In addition to, or instead of, making this showing, plaintiff may request that this Court construe this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### *BACKGROUND*

The following facts are drawn from plaintiff's complaint, the allegations of which are assumed to be true for purposes of this Order. All of these facts relate to plaintiff's arrest and prosecution for the crimes for which he is currently incarcerated.

Plaintiff was arrested in the early morning hours of January 29, 2002 (Complaint at 10). Plaintiff was in the vicinity of a fast-food restaurant at 39–16 111th Street, Queens, when two officers from the 115th Precinct—defendants Kristopher Camacho and Kerri Hoovert—approached and asked him questions concerning his whereabouts that evening (*Id.*). Plaintiff told the officers, "[I]f I am not under arrest for anything, I do not have anything to say," and attempted to leave the vicinity (*Id.*). However, Camacho stopped and frisked plaintiff (*Id.*). Although Camacho found nothing, Hoovert performed a second search about one minute later and "mysteriously found" an empty gun magazine in one of plaintiff's pockets (*Id.,* at 10, 11).

Although plaintiff immediately told Camacho that Hoovert had "planted" the magazine on him, plaintiff was placed in the back of a police cruiser while Camacho, Hoovert and other unidentified officers searched for a gun (*Id.,* at 10). After the police recovered a pistol, allegedly from the inside of the restaurant, and as they were talking to one another outside, plaintiff suffered an asthma attack (*Id.,* at 10, 11). Plaintiff yelled for help, but the officers told plaintiff to "shut up" and threatened to gag him (*Id.,* at 11).

After a second, unsuccessful attempt to tell police that he "needed medical attention immediately," plaintiff "decided to kick out the back [window] o[f] the police cruiser" (*Id.*). Although plaintiff remained handcuffed in the back of the car, the police responded by squirting pepper spray in plaintiff's eyes (*Id .*). Plaintiff was promptly taken to the hospital thereafter, but alleges that he was "physically and mentally abused" by Camacho, Hoovert and other officers en route (*Id.*).

**\*2** After being treated at the hospital, plaintiff was taken to the 115th Precinct for processing (*Id.*). According to plaintiff, he was not charged with gun possession, but only with criminal mischief in the fourth degree for breaking the car window (*Id.*). Thereafter, the police attempted to take plaintiff to Queens County Criminal Court (*Id.*). However, plaintiff suffered another asthma attack and "had to be rushed back to the hospital for a second time" (*Id.*).

After plaintiff was treated, he was returned to the 115th Precinct. There, at approximately 12:15 a.m. on January 30, 2002, a detective—defendant Kenneth Paccio—placed plaintiff in three lineups in connection with robbery cases (*Id.,* at 12, 15, 18). According to plaintiff, Paccio "forced [him] by using threats to tell him the number of the seat" in which plaintiff would be sitting, then communicated that information to the witnesses before they viewed the lineups (*Id.,* at 15, 18). Plaintiff claims that, as a result, he was misidentified as a perpetrator of the robberies (*Id.*). In addition, plaintiff suggests that Paccio wrote a report stating that a fourth witness had identified plaintiff, even though that witness did not even view a lineup (*Id .,* at 18).

Around 12:30 a.m. on January 30, 2002, the police began questioning plaintiff about his involvement in the robberies (*Id.,* at 11–12). Plaintiff alleges that he was never read his *Miranda* rights (*id.,* at 14), and that the police specifically attempted to elicit an admission that plaintiff owned the gun recovered from the restaurant (*Id.,* at 12). Although the police allegedly "verbally abus[ed]" and threatened plaintiff during the questioning, plaintiff denied possessing the gun or committing a robbery (*Id.*).

Plaintiff claims that at some point thereafter—perhaps prior to plaintiff's arraignment—Camacho and Hoovert "combined with" the prosecutor, defendant Maryam Lipkansky, and "fabricated all Police Reports" to make it appear that plaintiff had been arrested for robberies (*Id.,* at 12). When plaintiff was arraigned, the judge—identified in the complaint only as an "Honorable County Court Judge" [1]—declined to hold a hearing to determine if plaintiff's arrest was legal (*Id.,* at 12, 13). Plaintiff alleges that the judge "knew that [plaintiff] had been illegally detained and that the presumed probable cause for the arrest and accusation of robbery were completely fabricated" (*Id.,* at 12).

[1]     This Court will take judicial notice of the fact that there is no County Court in Queens County. *See* http:// www.courts.state.us/ courts/11jd/index.shmtl. This Court assumes that plaintiff was arraigned by a judge in Queens County Criminal Court.

Plaintiff claims that Camacho, Hoovert and Lipkansky also fabricated much of the evidence presented before the Grand Jury, at the pre-trial hearings, and at the trial itself. According to plaintiff, a complainant named John Gutierres falsely testified before the Grand Jury that he identified plaintiff

prior to his arrest (*Id.,* at 13). [2] However, Gutierres claimed that plaintiff was sitting in a police van at the time of the identification (*Id.,* at 13, 17). Plaintiff alleges that he was in the restaurant at the time of the alleged identification, and that only the defendant officers themselves were in the van (*Id.*).

[2]     This same complainant is identified elsewhere in the complaint as "John Gutierrez." However, prosecution paperwork attached to plaintiff's complaint as Exhibit C identifies this complainant as "John Gutierres." Accordingly, this Court will use the latter spelling.

 **\*3** Plaintiff further alleges that at a *Mapp* hearing conducted in mid-February 2003 before defendant Joseph Grosso—an acting justice of the New York Supreme Court, Queens County—Camacho and Hoovert again falsely testified that, prior to plaintiff's arrest, Gutierres had identified plaintiff as the person who robbed him (*Id.,* at 12–13). Plaintiff claims that Camacho and Hoovert also presented fabricated ballistics evidence at the *Mapp* hearing, since the gun allegedly recovered in the restaurant—unlike the gun used in the robbery—was inoperable (*Id.,* at 14). In addition, plaintiff claims that Camacho, Hoovert and Lipkansky convinced another complainant, Eduardo Checo, to close his store so as to permit a bullet to be fired into a refrigerator therein for the purpose of creating evidence against plaintiff, which was then used at trial (*Id.*).

Finally, plaintiff claims that the evidence presented at his trial before defendant Justice Seymour Rotker was not only insufficient to prove his guilt beyond a reasonable doubt, but sufficient to prove that he had "nothing to do with this case ... to an overwhelming probability" (*Id.*). Plaintiff alleges that Checo was the only witness who "accused" him at trial, but that Checo's testimony was incredible for various reasons (*Id.,* at 15). Although there were four other prosecution witnesses, plaintiff claims that none was able to make an in-court identification and that the prosecution presented no forensic evidence (*Id.,* at 13–14).

Nonetheless, plaintiff was convicted after trial of three counts of robbery in the first degree, and one count each of robbery in the second degree, criminal mischief in the fourth degree and resisting arrest. Plaintiff's conviction was affirmed by the Appellate Division of the Supreme Court of the State of New York, Second Department, on December 11, 2007 (*Id.,* at 9; *People v. Perez,* 46 A.D.3d 708, 847 N.Y.S.2d 226 (N.Y.App.Div.2007)). Plaintiff's application for leave

to appeal to the New York Court of Appeals was denied on March 7, 2008 (Complaint at 9; *People v. Perez,* 10 N.Y.3d 708, 857 N.Y.S.2d 48 (N.Y.2008)). According to this Court's Electronic Case Filing system, plaintiff has yet to file a petition for a writ of habeas corpus challenging this conviction.

In late December 2008, plaintiff commenced this action, which purports to be a civil rights action pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff specifically alleges that defendant Camacho, Hoovert and Paccio "fabricated evidence" against him, "combined with" defendant Lipkansky and defendant, Richard A. Brown— the District Attorney of Kings County (Complaint at 6, 17). Plaintiff further claims that defendants Grosso and Rotker violated his rights by failing to conduct a *Dunaway* hearing to determine whether the police had probable cause to arrest plaintiff, and that Justice Rotker wrongly found that plaintiff was fit to stand trial and to be sentenced, despite the fact that three psychiatrists had found him unfit to proceed (*Id.,* at 17). In addition, plaintiff names New York State Attorney General Andrew Cuomo as a defendant, stating that he "holds [plaintiff] in State Prison with false testimonies and also fabricated evidence" (*Id.*). However, plaintiff does not request his immediate release from incarceration. Rather, he seeks only damages in the amount of $27 million from each defendant. (*Id.,* at 6)

### *DISCUSSION*

#### A. Standard of Review

**\*4** Title 28, section 1915A, of the United States Code requires this Court to review the complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, ... fails to state a claim upon which relief may be granted ... [or] seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (per curiam). An action is "frivolous" when "either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory. *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal quotations and citation omitted).

*Pro se* submissions are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Indeed, a *pro se* plaintiff's complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999).

#### B. Judicial Immunity

Two of the defendants from whom plaintiff seeks only monetary damages are clearly immune from such relief. Defendants Joseph Grosso and Seymour Rotker are both justices of the Supreme Court of the State of New York. As judges, they enjoy absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Forrester v. White,* 484 U.S. 219, 225, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). This absolute judicial immunity "is not overcome by allegations of bad faith or malice," nor can a judicial officer be deprived of immunity "because the action he took was in error ... or was in excess of his authority." *Mireles,* 502 U.S. at 11, 13 (quotations and citations omitted). This immunity may be overcome only if the court is alleged to have taken nonjudicial actions or if the judicial actions taken were "in the complete absence of all jurisdiction." *Id.,* at 11–12.

There is no question that plaintiff's claims against these two judges stem from judicial acts performed in their judicial capacities. Indeed, plaintiff's only claims against the judicial defendants relate to specific judicial rulings that plaintiff did not like. First, although plaintiff expressly alleges that Justice Grosso conducted a *Mapp* hearing, Complaint at 12, plaintiff faults both judicial defendants for failing to hold a *Dunaway* hearing to determine if there was probable cause for his arrest. Second, plaintiff alleges that Justice Rotker erred in ruling that plaintiff was fit to proceed with trial and sentencing, despite psychiatric evidence to the contrary. Since both judges enjoy absolute immunity from liability for these judicial acts, the claims against Justices Grosso and Rotker must be dismissed pursuant to 28 U.S.C. § 1915A(b).

### C. *Section 1983*

**\*5** Plaintiff's claims against the remaining six defendants all appear to be either "clearly baseless" or "based on an indisputably meritless legal theory." *Livingston,* 141 F.3d at 437. All of these claims are based on 42 U.S.C. § 1983 (" § 1983"), which "provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). In order to maintain a § 1983 action, a plaintiff must allege both that he was injured by either a state actor or a private entity acting in conceit with a state actor under color of state law, *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992), and that the conduct complained of deprived him "of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Pitchell v. Callan,* 13F.3d 545, 547 (2d Cir.1994).

### D. *Supervisory Liability*

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Supervisory liability cannot rest on *respondeat superior* or on "linkage in the ... chain of command." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citing *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989), and quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). A supervisory official is deemed to have been personally involved in a constitutional violation if that official directly participated in the infraction; if, after learning of a violation, he failed to remedy the wrong; if he created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

In this case, plaintiff names Queens County District Attorney Richard A. Brown and New York State Attorney General Andrew Cuomo as defendants. He suggests that these defendants "combined with" the other defendants to keep him in state prison. (Complaint at 17.) However, plaintiff fails to attribute any particular action or omission to either of these defendants, nor does he allege any policy or custom promulgated by them. As he has failed to show how these supervisory officials violated his rights, the claims against

Defendants Brown and Cuomo must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### E. *The Alleged Constitutional Violations*

Plaintiff's complaint does not specify which "rights, privileges, or immunities secured by the Constitution or the laws of the United States" have been violated by the remaining four defendants. However, reading the complaint liberally, this Court construes plaintiff's pleading as suggesting four federal Constitutional claims. First, plaintiff is clearly alleging that defendants Camacho and Hoovert falsely arrested him on January 29, 2002. Second, plaintiff appears to be alleging that these officers used excessive force by spraying him with pepper spray as he sat handcuffed in the back of their patrol car. Third, plaintiff is unquestionably alleging malicious prosecution by defendants Camacho, Hoovert, Paccio and Lipkansky, all of whom are alleged to have fabricated evidence. Finally, plaintiff appears to be alleging that these four defendants violated his due process to a fair trial. These four claims are addressed, seriatim, below.

### 1. *False Arrest and Excessive Force*

**\*6** Plaintiff's first two Constitutional claims both appear to be time-barred. In New York State, the statute of limitations for actions brought pursuant to § 1983 is three years. *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Paige v. Police Dep't of City of Schenectady,* 264 F.3d 197, 199, n. 2 (2d Cir.2001). The date of accrual for a § 1983 claim is determined by federal law. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Although a § 1983 claim generally accrues "when the plaintiff knows or has reason to know of the harm" he or she has suffered, *see Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) (quoting *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994)), the precise date varies depending on the type of claim alleged.

Courts in this Circuit "have repeatedly held that claims for ... excessive force accrue on the date ... the force is used ." *Daniel v. Safir,* 175 F.Supp.2d 474, 480 (E.D.N.Y.2001) (citing cases); *see Singleton v. New York,* 632 F.2d 185, 192 (2d Cir.1980). However, the period of limitations for a claim of false imprisonment, which includes false arrest, begins to run "when the alleged false imprisonment ends." *Wallace,* 549 U.S. at 389. As the *Wallace* Court explained, false imprisonment ends not when the plaintiff is eventually released from custody, but when the plaintiff becomes held pursuant to legal process—"when, for example, he is bound over by a magistrate or arraigned on charges." *Id.*

In this case, plaintiff alleges that the police used excessive force against him on January 29, 2002. Plaintiff does not provide the precise date on which he was arraigned, but implies that his arraignment took place on or about January 30, 2002. Plaintiff did not commence this action, however, until sometime after December 29, 2008.[3] Accordingly, plaintiff's false arrest and excessive force claims appear to be time-barred.

[3]     Although plaintiff's complaint was received by the Pro Se Office at the United States District Court for the Southern District of New York on January 5, 2009, it is deemed to have been filed when it was placed in the prison mailbox. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Plaintiff's complaint does not include an affidavit indicating when plaintiff delivered his pleading to prison authorities, but his papers are dated December 29, 2008.

The statute of limitations applied to § 1983 actions may be equitably tolled in exceptional circumstances. Like the length of the limitations period, equitable tolling is governed by state tolling provisions. *Wallace,* 549 U.S. at 394; *Board of Regents v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). In New York, the statute of limitations period may be extended "[i]f a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues ...." New York Civil Practice Law and Rules § 208 (McKinney's 2003).

Although plaintiff does not assert any reason for the delay in filing, he does allude to a history of mental illness, stating that he has "been receiving psychiatric treatment for the past 14 years" and listing various medications. Complaint at 9. In light of this lengthy history, this Court will not dismiss plaintiff's false arrest or excessive force claims at this juncture. *See Abbas v. Dixon,* 480 F.3d 636, 639–40 (2d Cir.2007) (district court should not dismiss a *pro se* prisoner's complaint on the basis of an anticipated statute-of-limitations defense without first granting notice and an opportunity to be heard). Rather, the Court hereby directs plaintiff to show cause in writing within thirty (30) days of the date of this Order why his false arrest and excessive force claims should not be dismissed as time-barred. If plaintiff has a basis for asserting equitable tolling of the statute of limitations on the basis of insanity, he must provide the court with information regarding the nature and duration of his disability.

### 2. Malicious Prosecution

**\*7** In order to establish liability for malicious prosecution, a plaintiff must establish the following elements: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions. *Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir.2004); *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 417 (2d Cir.1999). Here, plaintiff cannot show that the prosecution terminated in his favor. To the contrary, plaintiff himself alleges that his convictions have been upheld on appeal. Complaint at 9; *People v. Perez,* 46 A.D.3d 708, 847 N.Y.S.2d 226 (N.Y.App.Div.2007), *aff'd,* 10 N.Y.3d 708, 857 N.Y.S.2d 48 (N.Y.2008). Accordingly, the complaint fails to state a claim for malicious prosecution, and such claims must be dismissed as to all defendants pursuant to 28 U.S.C. § 1915A(b).

### 3. Denial of Constitutional Right To Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C.1983." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir.1997) (citing cases). A § 1983 claim for the violation of the due process right to a fair trial is, "in essence, 'a claim for damages attributable to an unconstitutional conviction.' " *Jovanovic v. City of New York,* No. 04 CV. 8437(PAC), 2006 WL 2411541, at \*12 (S.D.N.Y. Aug.17, 2006) (citing *Heck v. Humphrey,* 512 U.S. 477, 489–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). However, "in order to recover damages for allegedly unconstitutional conviction ... or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ..., or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 486–87. Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, *id.,* and must be dismissed as to all defendants pursuant to 28 U.S.C. § 1915A(b).

### F. Habeas Corpus

Although plaintiff brings this action pursuant to § 1983 and seeks only money damages, this Court notes that plaintiff is challenging the constitutionality of his continued confinement. Indeed, while plaintiff has not named the warden of Green Haven Correctional Facility as a defendant, he has sued Attorney General Andrew Cuomo, alleging that the Attorney General "holds [him] in a State Prison" based on a conviction obtained with "fabricated evidence." Complaint at 17. Such allegations, together with the fact that plaintiff filed this action within one year after the New York Court of Appeals denied his leave application, suggest that plaintiff may have intended this action to serve as a petition for a writ of habeas corpus. "[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release ...." *Heck,* 512 U.S. at 481 (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)).

**\*8** Although this Court could construe this complaint as an petition for a writ of habeas corpus, it declines to do so unless plaintiff requests that this submission to be construed in that manner. Under the Antiterrorism and Effective Death Penalty Act of 1996, a State prisoner is typically limited to a single petition for habeas relief. *See* 28 U.S.C. § 2244(b)(3). While this Court's Electronic Case Filing system does not indicate that plaintiff has yet petitioned this Court for habeas corpus relief with respect to his March 2005 conviction, this Court does not know whether plaintiff has errantly filed such a petition in another district court or whether there are pending State court motions for post-conviction relief. Accordingly, this Court will not consider construing this action as a petition for habeas corpus relief unless plaintiff expressly requests that it do so.

## CONCLUSION

For the reasons set forth above, the claims against Andrew Cuomo, Richard A. Brown, Joseph Grosso, and Seymour Rotker are dismissed pursuant to 28 U.S.C. § 1915A(b). Plaintiff's § 1983 claims for malicious prosecution and violation of his due process right to a fair trial are also denied. Plaintiff must show cause in writing on or before May 22, 2009, why his false arrest and excessive force claims should not be dismissed as time-barred. To permit plaintiff time to make that showing, all further proceedings shall be stayed until that date. No summons shall issue at this time.

In addition to, or instead of, showing cause why his § 1983 claims for malicious prosecution and violation of his due process right to a fair trial are not time-barred, plaintiff may request, on or before May 22, 2009, that this Court construe this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. If plaintiff fails to respond to this Order within the time allowed, this action will be dismissed in its entirety pursuant to 28 U.S.C. § 1915A(b). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1046137

---

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1759853
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Germaine MONTES, Plaintiff,

v.

Connor O'SHEA, et al., Defendants.

1:21-CV-303 (DNH/ATB)
|
Signed 04/06/2021

**Attorneys and Law Firms**

GERMAINE MONTES, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** The Clerk has sent to the court a civil complaint filed by pro se plaintiff Germaine Montes. (Complaint ("Compl.") (Dkt. No. 1). Plaintiff has also moved to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

**I. IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505

F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

**II. Complaint**

Plaintiff alleges that on or about February 16, 2021, defendant Albany Police Department Detective O'Shea "filed a false complaint" against him. (Compl. at 7). [1] According to the New York State arrest report attached to plaintiff's complaint, plaintiff was arrested for possessing a loaded firearm on February 15, 2021 at approximately 10:46 p.m., in the rear parking lot of a hotel in Albany, New York. (*Id.* at 15). Plaintiff further alleges that defendant Detective Graham "arrested [him] based on the false complaint," and defendant Detective Brace "help[ed] and assisted" in the arrest. (*Id.* at 7).

[1]     The court will cite to the pages of the complaint that have been assigned by the court's electronic filing system CM/ECF.

**\*2** Plaintiff states that a criminal action was subsequently commenced "under The People of the State of New York ([defendant] Letitia James)." (*Id.*). "[Defendant Albany City Court Judge] Holly Trexler then proceeded and presided over the fraudulent complaint," and "sent" plaintiff to "Albany County Correctional and Rehabilitative Services Center [("Albany CCF")] against his will." (*Id.*).

Plaintiff alleges that defendant public defenders DeSorbo and Schupp represented plaintiff in connection with the "false complaint," without his consent. (*Id.* at 9). Plaintiff also states that although he asked that none of his rights be waived,

2021 WL 1759853

DeSorbo and Schupp "wrote a letter to [Judge Trexler] ... and ask[ed] that [his] case be sent to grand jury without [his] consent." [2] (*Id.*).

[2]   Plaintiff has attached a February 22, 2021 correspondence from DeSorbo to Judge Trexler requesting that the court "waive his case up for action of the Grand Jury," per plaintiff's request. (*Id.* at 19).

Plaintiff then alleges that defendant Albany County Sheriff Apple "placed and/or had his deputy sherriff(s) place[ ]" him in custody and held him against his will based on the "fraudulent complaint filed by defendant O'Shea." (*Id.*). Plaintiff states that he was held at Albany CCF against his will by defendant Superintendent of Albany CCF Lyons. (*Id.*). According to plaintiff, Superintendent Lyons "locks people on a dirty tier and a dirty cell. Everyone is closed in together and put next to other possible covid infected people and no one is allowed to clean th[eir] cell." (*Id.*). Plaintiff alleges that those in custody are not provided cleaning supplies, and no one is otherwise hired to clean the tiers. (*Id.*). He states that the food at Albany CCF causes him "pains in [his] stomach," but "medical" refuses to treat him or provide pain medication. (*Id.*).

The court construes plaintiff's complaint to raise the following causes of action: (1) claims pursuant to 18 U.S.C. § 242 against defendants O'Shea, Graham, and Brace for depriving plaintiff of his rights under color of law; (2) claims pursuant to 18 U.S.C. § 241 against defendants James, Trexler, DeSorbo, Schupp, Apple and Lyons for conspiracy against rights, (3) 42 U.S.C. § 1983 claims against defendants O'Shea, Graham, Brace, and Apple for false arrest/imprisonment, and (4) 42 U.S.C. § 1983 claims against defendant Lyons based on conditions of confinement and inadequate medical care. Plaintiff seeks damages in the amount of "$250.000 from each defendant ... [and] any and other further relief this court deems just and proper." (*Id.* at 13). Based on the above summary of plaintiff's complaint, this court will conduct an initial review of plaintiff's claims.

### III. Criminal Statutes

#### A. Legal Standards

Crimes are prosecuted by the government, and not by private parties. *Corrado v. New York Office of Temporary and Disability Assist.*, No. 15-CV-7316, 2016 WL 3181128, at *5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F.

App'x 13, 14-15 (2d Cir. 2006)). There is no private right of action to enforce federal criminal statutes, unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009)).

#### B. Application

**\*3**  Plaintiff alleges that the defendants have violated 18 U.S.C. §§ 241 (conspiracy against rights) and 242 (deprivation of rights under color of law). Both of these federal statutes provide for criminal penalties, and there is no language in either which explicitly authorizes, or implies, a private right of action. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (summary order) (no private right of action for 18 U.S.C. §§ 241, 242); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (finding no private right of action in a case in which plaintiff was attempting to enforce, among other statutes, § 241). Thus, no matter plaintiff's assertions surrounding his "citizenship," [3] he may not enforce these criminal statutes against any of the defendants, and the complaint may be dismissed in this regard.

[3]   Based on plaintiff's allegations, it appears he identifies as a "sovereign citizen." (Compl. at 5). The Second Circuit has described sovereign citizens as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir. 2013).

### IV. *Heck v. Humphrey*

#### A. Legal Standards

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87. The rule in *Heck* applies whether the conviction is

federal or state. *See Carpenter v. Comm'r of IRS*, No. 3:13-CV-563, 2016 WL 7238792, at *4 (D. Conn. Dec. 14, 2016) (noting that *Heck* would apply to the plaintiff's case, when the plaintiff was convicted in federal court).

### B. Analysis

Arguably, the complaint may be construed to allege section 1983 claims sounding in false arrest against Detectives O'Shea, Graham, and Brace; and/or false imprisonment against Sheriff Apple. At this juncture, however, the court is unable to determine whether these causes of action are barred by *Heck*. Although plaintiff's complaint states that he was arrested and confined to Albany CCF in conjunction with the underlying weapons possession charge, he does not specify the status of his criminal proceeding. [4] If plaintiff's criminal action has since terminated, in order to recover damages for the purported false arrest and/imprisonment, he must set forth that the conviction or sentence has been resolved in his favor. Because plaintiff has not alleged sufficient facts in this regard, the court cannot determine whether these claims may survive initial review. Thus, these claims should be dismissed without prejudice, allowing plaintiff the opportunity to plead the status of the underlying criminal proceeding.

[4]  Based on plaintiff's most recent submissions to this court, it appears he remains confined at the Albany CCF. (*See* Dkt. No. 4).

Furthermore, to the extent that plaintiff should amend his complaint to show that his false arrest/imprisonment claims are not barred by *Heck*,[5] it remains incumbent on him to allege more detailed facts plausibly suggesting a violation of his constitutional rights has occurred.[6] As it currently stands, plaintiff's complaint is replete with conclusory statements and "naked assertions devoid of further factual enhancement" with respect to these claims. *Iqbal*, 556 U.S. at 678 (internal citations and alterations omitted). To state a false arrest claim under New York law, a plaintiff must allege that: " (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (citations and quotations omitted).

[5]  The Second Circuit has held that "*Heck* bars a § 1983 claim based on an extant conviction, but it has no apparent application to an anticipated future conviction." *Stegemann v. Rensselaer Cty. Sheriff's Off.*, 648 F. App'x 73, 76 (2d Cir. 2016) (finding that since plaintiff's criminal trial was still ongoing, civil relief was not categorically barred by the favorable termination rule of *Heck*). Thus, if plaintiff's criminal action in this case is still pending, *Heck* would be inapplicable.

[6]  Plaintiff's false arrest and false imprisonment claims are addressed together for the purposes of this court's analysis. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment.") (citations omitted).

**\*4**  Here, plaintiff does not describe the circumstances leading to his arrest, the charges ultimately brought against him as a result of the arrest, or the status of his criminal proceedings. To be sure, "[i]t is not enough to declare, 'Defendants falsely arrested [or detained] me[,]' " and plaintiff must provide sufficient factual allegations, in the event that he chooses to amend his complaint, to plausibly state the elements of his claims. *Nelkenbaum v. New York*, No. 19-CV-7953, 2019 WL 5538052, at *3 (S.D.N.Y. Oct. 25, 2019).

## V. Judicial Immunity

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the

judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing *inter alia Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam)). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing *inter alia Mireles*, 502 U.S. at 10).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself" - whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13).

### B. Application

In this case, plaintiff has named Albany City Court Judge Holly Trexler as a defendant. Plaintiff alleges that Judge Trexler "presided over the fraudulent complaint" and sent plaintiff to Albany CCF against his will. As previously discussed, the section 241 claim asserted against Judge Trexler is subject to dismissal because plaintiff has no right to enforce a federal criminal statute. Notwithstanding, and to the extent plaintiff seeks to impose liability against Judge Trexler on any alternative basis, [7] it is clear that Judge Trexler's actions, as described by plaintiff, occurred while she was presiding over plaintiff's state criminal action. *See Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) ("[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature."). Thus, the doctrine of judicial immunity precludes plaintiff's action against Judge Trexler under any other perceived theory of liability.

[7]    This is true even if the court assumes that plaintiff is attempting to sue Judge Trexler under section 1983.

### VI. Prosecutorial Immunity/Personal Involvement

### A. Legal Standards

### 1. Prosecutors

**\*5** It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502–503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir. 2006).

### 2. Personal Involvement

Notwithstanding the availability of absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations, and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). The Second Circuit has recently revisited its standard for determining personal involvement and supervisory liability, articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 615-19 (2d Cir. 2020). Joining other circuits, the Second Circuit held that there is no "special" rule for supervisory liability. *Id.* at 618.

Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 .... "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Quoting a 10th Circuit case, the *Tangreti* court stated that " '[a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, *unless that is the same state of mind required for the constitutional deprivation he alleges.*' " *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010)) (internal quotation marks omitted) (emphasis added, other citations omitted). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### B. Application

Plaintiff is seeking damages against New York Attorney General ("AG") Letitia James in conjunction with the criminal proceedings brought against him. However, the complaint is devoid of any facts explaining how AG James, or anyone in the New York Attorney General's Office, was involved in plaintiff's criminal action. Plaintiff was arrested by the Albany Police Department for the crime of Criminal Possession of a Weapon in the Second Degree. He was arraigned in front of Albany City Court Judge Trexler. Generally, these categories of local crime are prosecuted by the county district attorney's office, and plaintiff has presented no basis for this court to find that AG James had any personal involvement in his criminal proceeding. *See Baez v. Hennessy*, 853 F.2d 73, 76-77 (2d Cir. 1988) (discussing the nuances between the offices of the district attorney and attorney general and recognizing that in New York "the district attorney ... [decides] ... when and in what manner to prosecute a suspected offender.").

**\*6** Moreover, in the unlikely event that plaintiff could show AG James' personal involvement, any suit for damages against her in conjunction with initiating the criminal proceeding would be barred by absolute immunity. *See Brooks v. Spitzer,* No. 9:13-CV-1483 (GLS/ATB), 2015 WL 1313243, at \*4 (N.D.N.Y. Mar. 24, 2015) (adopting magistrate's recommendation to dismiss the complaint against the former Attorney General based on absolute prosecutorial immunity).

### VII. Eleventh Amendment

### A. Legal Standard

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n. 3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n. 1 (2d Cir. 1991) (citations omitted).

### B. Application

Plaintiff appears to name the State of New York as a defendant in conjunction with AG James in his complaint. To the extent that plaintiff is attempting to sue the state of New York and/or AG James in her official capacity for damages, the claim is subject to dismissal based on Eleventh Amendment immunity.

### VIII. Defense Counsel

### A. Legal Standards

To state a claim under section 1983, the defendant must act "under color of state law." *O'Donoghue v. United States Social Security Administration*, 828 F. App'x 784, 787 (2d Cir. 2020) (citation omitted). "Private attorneys, whether court appointed or privately retained, are generally not liable under § 1983." *Kunz v. Brazill*, No. 6:14-CV-1471 (MAD/TWD), 2015 WL 792096, at \*7 (N.D.N.Y. Feb. 25, 2015) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.") (citation omitted)); *Delarosa v. Serita*, No. 14-CV-737, 2014 WL 1672557, at \*3 (E.D.N.Y. Apr. 28, 2014) ("[P]ublic defenders, including Legal Aid attorneys, court-appointed counsel and private attorneys do not act under the color of state law merely by virtue of their position.").

However, "an otherwise private person or entity," including private or "appointed defense counsel, can act 'under color of state law' if he or it engages in a conspiracy with state officials to deprive a person of his federal rights." *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 546 (E.D.N.Y. 2004) (citing *Tower v. Glover*, 467 U.S. 914, 920 (1984)); *see McClinton v. Suffolk Cnty. Police 3rd Precinct*, No. 12–

CV–3777, 2014 WL 1028993, at *4 (E.D.N.Y. Mar. 14, 2014). Claims alleging conspiracies to violate civil rights must be pleaded with specificity and "[a]n otherwise invalid 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.' " *Brewster*, 349 F. Supp. 2d at 546. Rather, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002) (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).

### B. Application

**\*7** As previously discussed, this court recommends dismissal of the § 241 claims against defendant public defenders DeSorbo and Schupp. To the extent plaintiff intends to challenge the conduct of these defendants under any other theory of liability, including ineffective assistance of counsel, dismissal is warranted. In their role as plaintiff's defense attorneys, DeSorbo and Schupp were not acting under the color of state law for purposes of § 1983. Moreover, plaintiff does not plausibly allege that his attorneys acted jointly, or conspired, with a state actor to deprive plaintiff of some constitutional rights. Other than citing to federal criminal statute § 241 (conspiracy against rights), plaintiff fails to advance any factual allegations that would support such a claim. Rather, plaintiff's complaint focuses on the attorneys' allegedly deficient representation of him. Accordingly, plaintiff is barred from asserting liability against DeSorbo and Schupp in his federal complaint.

### IX. § 1983 Claims – Defendant Lyons

#### A. Legal Standards

##### 1. Conditions of Confinement

A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The due process clause is applicable because pretrial detainees have not yet been convicted of a crime and thus, may not be punished in any manner, cruel or otherwise. *Id.* (citations omitted). A pretrial detainee may establish a section 1983 claim for allegedly unconstitutional conditions of confinement by showing that the defendant officers acted with deliberate indifference to the challenged conditions.

*Id.* In *Darnell*, the Second Circuit clarified the standard for deliberate indifference as it applies to pretrial detainees. *Id.* at 29-37.

To establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause, the plaintiff must

> prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew or should have known, that the condition posed an excessive risk to health or safety.

*Id.* at 35. The Second Circuit concluded that deliberate indifference for due process purposes must be defined "objectively." *Id.* However, any claim for a due process violation requires more than mere negligence. *Id.* (citing *Kingsley v. Hendrickson*, ––– U.S. –––, 135 S. Ct. 2466, 2472 (2015)).

#### 2. Medical Care

A pretrial detainee alleging deliberate indifference to serious medical needs under the Fourteenth Amendment must establish: (1) that the detainee had a serious medical need; and (2) that the defendant either: "acted intentionally to impose the alleged condition" or "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 30, 35 (emphasis added); *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Walker v. Wright*, No. 17-CV-425, 2018 WL 2225009, at *5 (D. Conn. May 15, 2018) (noting that, while *Darnell's* holding was applied to a conditions of confinement claim, "[d]istrict courts in this Circuit have ... applied *Darnell's* objective 'mens rea' prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"). "In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim

[under the Fourteenth Amendment] is defined objectively." *Darnell,* 849 F.3d at 35.

### B. Application

The court construes plaintiff's complaint to raise Fourteenth Amendment conditions of confinement and medical care claims against Albany CCF Superintendent Lyons. With respect to the former, plaintiff alleges that while confined to Albany CCF he was placed in a "dirty" environment, where everyone was "closed in together" and put next to "other possible covid infected people." Plaintiff claims there were deficient cleaning supplies and/or personnel, and that the prison food caused him "pains in his stomach." As for medical care, plaintiff claims that medical "refused to treat [him] or provide pain medication and more[.]"

**\*8** Turning first to the conditions of confinement at Albany CCF, plaintiff's vague allegations impede this court's ability to determine whether the challenged conditions rise to the level of a constitutional violation. To be sure, "[i]t is undisputed that COVID-19 is a highly dangerous disease that poses a significant risk of severe illness and death[.]" *Rodriguez v. McCormick,* No. 3:20-CV-01019, 2021 WL 83503, at \*7 (D. Conn. Jan. 11, 2021) (internal quotations and citation omitted). Moreover, it is clear that "[u]nsanitary conditions, especially when coupled with other mutually enforcing conditions ... can rise to the level of an objective deprivation." *Darnell v. Pineiro,* 849 F.3d at 30 (citations omitted). Here, however, plaintiff's allegations of unpleasant conditions – a dirty tier and stomachaches from the food – fail to describe conditions so severe as to deprive plaintiff "of [his] basic human needs – *e.g.,* food, clothing, shelter, medical care, and reasonable safety," or which pose "an unreasonable risk of serious damage to [his] future health." *Id.; see e.g. Grant-Cobham v. Martinez,* No. 20-CV-1947, 2020 WL 2097807, at \*2 (E.D.N.Y. May 1, 2020) (recognizing that plaintiff's primary grievance *may* amount to a violation of the constitution, but dismissing the complaint for failure to provide sufficient detail to the court in order to state a claim for unconstitutional conditions of confinement under § 1983). Nor does the court find that by referencing the *potential* risk of exposure to Covid-19, without more, plaintiff has plausibly alleged that his living conditions reflected a level of deprivation cognizable under the Fourteenth Amendment.

In addition, plaintiff has also failed to plausibly allege that defendant Lyons was directly involved in violating his constitutional rights at Albany CCF in this regard. Plaintiff alleges, generally, that Superintendent Lyons "locks people on a dirty tier and a dirty cell." This vague and conclusory statement fails to provide any factual detail as to how Superintendent Lyons participated in subjecting plaintiff to any unconstitutional conditions. The fact that Lyons holds a supervisory position at Albany CCF does not change the pleading standards required of plaintiff. Because plaintiff has failed to allege Lyons' specific acts relating to plaintiff's conditions at Albany CCF, the court does not find that Lyons was personally involved in this claim.

Plaintiff's Fourteenth Amendment medical care claim against defendant Lyons presents similar deficiencies. In his complaint, plaintiff alleges that "medical" refused to treat him, however he has failed to name any medical staff as defendants.[8] Plaintiff's claim of inadequate medical treatment is alleged only against Superintendent Lyons. Nevertheless, there is no allegation that Superintendent Lyons was personally involved with plaintiff's medical treatment, or any decisions to deny plaintiff medical care during his confinement at Albany CCF.

[8]    Plaintiff has attached to his complaint a March 11, 2021 "Sick Call Request" which he purportedly filled out while confined at Albany CCF. (Compl. at 24). In the form, plaintiff states in relevant part that he has "not receive[d] any medical treatment and no one cares that this jail is dirty and disgusting...." (*Id.*). The form was signed by an unknown member of the medical staff on March 12, 2021, indicating that a face-to-face encounter had been conducted. (*Id.*).

Moreover, plaintiff has not plausibly alleged the elements of a medical deliberate indifference claim. Plaintiff does not state any facts indicating that the alleged deprivation in medical care was "sufficiently serious," nor does he state how Superintendent Lyons "knew" or "should have known" that his failure to provide medical treatment would pose a substantial risk to plaintiff's health.

Plaintiff's complaint concludes with additional, fleeting allegations against Superintendent Lyons for "denying dental treatment," "writing material," and "15 minutes only outside their cell." (Compl. at 13). Plaintiff has not provided any factual bases for these claims, nor has he described with any detail Superintendent Lyon's direct involvement. For the reasons previously set forth by this court, these cursory allegations fail to plausibly allege a violation of constitutional proportion against Superintendent Lyons.

## X. **Opportunity to Amend**

### A. Legal Standards

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

**\*9** The claims based on criminal statutes 18 U.S.C. §§ 241 and 242 may be dismissed with prejudice as against each named defendant, because these statutes do not provide for private causes of action. In addition, the complaint may be dismissed with prejudice as to Judge Trexler based on judicial immunity, as any attempt to amend would be futile. The complaint may also be dismissed with prejudice as to AG James, to the extent that plaintiff challenges any decisions or actions relating to the prosecution of his criminal case.

Plaintiff's claims against public defenders DeSorbo and Shupp may be dismissed without prejudice, but without leave to amend, because plaintiff's criminal counsel did not act under color of state law, and the court is without jurisdiction to consider any claims against them. [9]

[9]    Because this court is recommending dismissal for want of jurisdiction as against DeSorbo and Schupp, this does not preclude plaintiff from suing counsel in another forum, if one exists, or from bringing any claims of malpractice, if appropriate, in state court. However, plaintiff may not pursue claims against counsel in federal court under section 1983.

The court will recommend dismissing the complaint as against Detective O'Shea, Detective Graham, Detective Brace and Sheriff Apple, to the extent plaintiff has alleged any claims sounding in false arrest/imprisonment. The court recommends dismissal of these claims without prejudice and with an opportunity to amend, in order to provide plaintiff the opportunity to allege the necessary details surrounding his criminal proceeding. This includes the status of the charges which formed the basis for the arrest, in addition to the pertinent details alleging specifically how his constitutional rights were violated by each individual defendant in the course of his arrest and confinement. [10]

[10]    Regardless of any amendments by plaintiff, the court seriously questions whether he will be able to plausibly allege that defendant Apple, who appears to be the Sheriff of Albany County, was personally involved in any purported constitutional violations. *See* https://www.albanycounty.com/government/departments/county-sheriff

The court will also recommend dismissing plaintiff's § 1983 claims against Superintendent Lyons without prejudice to amend, in order to provide plaintiff an opportunity to show that Superintendent Lyons was personally involved in the alleged constitutional violations, and to more fully describe the unsanitary conditions plaintiff was exposed to and the medical care he was denied.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING** at this time, and it is

**RECOMMENDED**, that to the extent plaintiff bases his complaint upon criminal statutes 18 U.S.C. §§ 241 and 242, those claims be **DISMISSED WITH PREJUDICE** against all of the named defendants, and it is

**RECOMMENDED,** that any claims alleged by plaintiff under § 1983 against defendants **CONNOR O'SHEA, CURTIS GRAHAM, ADAM BRACE,** and **CRAIG D. APPLE SR.** be **DISMISSED WITHOUT PREJUDICE** to plaintiff amending his complaint to cure the defects stated above as it relates to any Fourth Amendment false arrest and/or imprisonment claims, and it is

**RECOMMENDED**, that plaintiff's claims against defendant **LETITIA JAMES** be **DISMISSED WITH PREJUDICE,** and it is

**RECOMMENDED**, that plaintiff's claims against defendant **HOLLY TREXLER** be **DISMISSED WITH PREJUDICE,** and it is

2021 WL 1759853

**RECOMMENDED**, that plaintiff's claims against defendants **EDMUND SCHUPP** and **GARY T. DESORBO** be **DISMISSED WITHOUT PREJUDICE**, but without the opportunity to amend, and it is

**\*10 RECOMMENDED,** that any claims alleged by plaintiff under § 1983 against defendant **MICHAEL J. LYONS** be **DISMISSED WITHOUT PREJUDICE** to plaintiff amending his complaint to cure the defects stated above in order to state proper Fourteenth Amendment conditions of confinement and medical care claims, and it is

**RECOMMENDED**, that if the District Judge adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the district court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any further orders relating to service on the defendants, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2021 WL 1759853

---

**End of Document**                     © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 1758858
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Germaine MONTES,

v.

Connor O'SHEA et al., Defendants.

1:21-CV-303
|
Signed 05/04/2021

**Attorneys and Law Firms**

Germaine Montes, Plaintiff, Pro Se, 20343, Albany County Correctional Facility, 840 Albany Shaker Road, Albany, NY 12211

### ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1** Pro se plaintiff Germaine Montes ("plaintiff") filed this action alleging civil rights violations in connection with his arrest and prosecution for possession of a firearm in violation of state law.

On April 6, 2021, U.S. Magistrate Judge Andrew T. Baxter granted plaintiff's motion for leave to proceed *in forma pauperis* for the purpose of filing. Dkt. No. 5. Judge Baxter also advised by Report & Recommendation that plaintiff's complaint be dismissed with prejudice as to certain defendants and without prejudice to refiling as to others. Dkt. No. 5. Plaintiff has filed objections to the Report & Recommendation. Dkt. No. 6.

Upon *de novo* review of the portions to which plaintiff has objected, the Report & Recommendation is accepted and adopted in all respects. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ADOPTED.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 1758858

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.